A. LEVY & J. ZENTNER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 67107, 68352. Promulgated October 23, 1934.

*Joseph C. Meyerstein, Esq.*, for the petitioner.
*George D. Brabson, Esq.*, for the respondent.

OPINION.

MORRIS: These consolidated proceedings are for the redetermination of deficiencies of $2,981.83 and $3,506.50 for the calendar years 1929 and 1930, respectively, presenting for consideration two errors

alleged to have been committed by the respondent, (1) the finding of the respondent that certain amounts claimed as deductions in both of the controverted years constituted dividends, not additional compensation, and his disallowance of deductions therefor, and (2) his disallowance of a claimed deduction in 1930, representing a proportionate part of an amount paid to the Pacific Fruit & Produce Co. in connection with the purchase of that company's leases, merchandise, fixtures, equipment, and business.

Petitioner is now and at all times since 1907 has been a corporation organized and existing under the laws of the State of California engaged in the wholesale produce business, with its principal office and place of business at San Francisco, California.

Under the bylaws of the corporation, duly and regularly adopted and in full force and effect during the years 1929 and 1930, a stockholder could sell or dispose of stock owned or held in petitioner corporation only after first offering the same to the directors of the corporation for appraisal and sale, with the intent that the stock of the corporation should be owned only by officers and employees of the corporation actively engaged in the business. Its stock certificates have a printed notation to that effect.

On the dates of March 4, 1924, January 22, 1927, February 8, 1929, and November 25, 1929, permits and/or supplemental permits were issued by the State Corporation Commissioner of the State of California authorizing petitioner corporation to sell and issue to its stockholders and employees shares of its capital stock for cash, so as to net the corporation the full amount of the sale price thereof, which was $100 a share, $100 a share, $109 a share, and $112 a share, respectively, under the four permits referred to.

From time to time the capital of the corporation has been increased and additional stock issued as aforesaid. This stock was offered in part to the old stockholders of the corporation and certain employees who had been with the corporation for a long time and had rendered efficient service. The latter were allowed to subscribe to a limited number of shares of the stock. The number of shares such employees were allowed to subscribe for was fixed at an amount which, in the opinion of the officers and directors of the company, was merited by the work performed and services rendered. Some employees paid cash in full for their stock. Other employees were permitted to subscribe and pay a small amount of cash or no cash on the stock and give their personal notes for the balance. The stock would thereupon be issued in the name of the employee, endorsed by such employee, and held by the corporation as security for the note. These notes were usually paid out of dividends declared on the stock. The stock was treated by the corporation on its books

as issued and outstanding, and dividends were voted and paid on such stock.

Under the terms of the agreement between petitioner corporation and each employee, referred to above, in the event of the resignation or discharge of the employee by the petitioner corporation, he was not entitled to receive the unpaid-for stock by making payment of the balance due thereon, but merely to receive the net amount credited to his account on the books of petitioner corporation.

In each instance where stock was sold to an employee under the circumstances hereinabove referred to, an agreement of sale was entered into between petitioner corporation and such employee, and in each instance, such employee executed and delivered to petitioner corporation a note for the amount of the purchase price of the stock as fixed by the permit of the Corporation Commissioner, then in force, and in each such instance the certificate of stock so issued by petitioner corporation was immediately endorsed by the employee and held by petitioner corporation as trustee, with the note, as security for the payment of such note until the note was finally paid in full.

For many years prior to 1929 petitioner corporation treated dividends credited on the stock which was the subject of agreements with employees, as hereinabove referred to, as additional salary paid to such employees, and claimed same as deductions from income for such years. An opinion from the Commissioner of Internal Revenue as to the method of treating said dividends was requested in the year 1927 by petitioner corporation, to which a response was made by the Commissioner under date of July 13, 1927, his conclusion being as follows:

With reference thereto you are advised that although the employee entering into such contract will not receive the stock in case he severs his connection with the corporation prior to completing payment of the purchase price, he will in any event receive the amount which has been credited to him and applied in payment of the purchase price of the stock less interest due on his account. He, therefore, acquires at the time an enforceable right to the amount so credited less interest on the account and has realized the amount as income by having it applied to the payment of the purchase price of the stock in accordance with the contract entered into by him for that purpose. The entire amount so credited should, therefore, be treated as if it had been actually received by him and applied in payment of the purchase price of the stock. The amounts so credited accordingly constitute taxable income to the employee as additional compensation for the period in which such amounts are credited and should be so reported by him. The amount of interest concurrently charged to his account similarly constitutes an allowable deduction to him from his gross income for the purpose of the income tax.

The amounts so credited to employees having agreements as hereinabove referred to during the year 1929 were $14,690.76, and during

the year 1930, $15,007.69, which are the amounts that petitioner corporation now claims should be allowed as a deduction from petitioner corporation's gross income for the years in question.

Most of the employees of the petitioner were salesmen who were employed from 2:30 to 3 a.m. until 4 p.m., and whose weekly salaries were between $30 and $35. The average dividends credited to their accounts were from $200 to $300 annually. In one of the years here in question, which was exceptional, the dividend was $19 a share, and in the following year amounted to $10 a share. The number of shares carried in the name of each employee varied from 15 to 25.

Respondent in his deficiency notice disallowed the sums of $12,-416.74 for the year 1929 and $4,696.80 for the year 1930 representing dividends which petitioner had credited to the account of treasury stock which had been previously issued and repurchased by the corporation. The sums of $14,690.76 for the year 1929 and $15,-007.69 for the year 1930 were disallowed as representing dividends which petitioner had credited to the account of newly issued capital stock to its employees, other than its officers or directors.

Petitioner corporation on or about January 28, 1929, entered into several agreements with the Pacific Fruit & Produce Co. for the purchase by petitioner corporation of leases, merchandise, furniture, fixtures, automobiles, and trucks at the three places of business of the Pacific Fruit & Produce Co. located at Reno, Nevada, and Chico and Sacramento, California, together with the business conducted by the Pacific Fruit & Produce Co. at the three named places. Under the terms of this transaction petitioner corporation agreed, among other things, to pay the market price of all merchandise and the net book value of the furniture, fixtures, automobiles, and trucks, and to pay in addition the sum of $20,500 in cash. At the time of this transaction the Pacific Fruit & Produce Co. was conducting its business at the places mentioned, and had been so conducting its business at said places for some time prior thereto at a heavy loss.

Whether the amounts claimed as deductions under the first allegation of error hereinabove set forth were dividends or additional compensation must be determined by the facts and circumstances of this particular case, and finding, as we do, that such facts and circumstances are not comparable with those in *Hudson Motor Car Co.* v. *United States*, 3 Fed. Supp. 834, and *Kreamer* v. *United States*, 66 Ct. Cls. 308, cited by the petitioner, we need only confine ourselves to the applicable sections of the statute and the record made in support of the errors alleged.

The petitioner alleges and contends that the amounts sought to be deducted were additional compensation to its employees for services

rendered within the taxable years. In order for it to succeed in establishing its contention under the statute it must appear from the record that such payments were in fact " salaries or other compensation for personal services actually rendered " and, in addition, that such amounts were " reasonable " under the circumstances. Sec. 23, Revenue Act of 1928.

The petitioner argues that because the employees could under no circumstances compel delivery of their stock until full payment therefor and because of the condition that if they failed to make such payment in full or if they were discharged or left the service of the corporation, all that they were entitled to was the amounts of their respective credits upon the books of account, such distributions should be characterized as additional salaries. These considerations are unimportant, however, in our opinion, when we realize that the transaction between the petitioner and its employees was one of absolute purchase and sale of stock, carrying, admittedly, certain contractual limitations upon the acquisition and future sale thereof, but which limitations in no sense of the word alter the significant fact that a purchase and sale actually occurred between the parties, and that each employee entering into the contract of purchase with the petitioner became and continued to be a stockholder so long as he complied with the conditions of the contract. The stock when purchased was issued in the name of the employee and was merely held as collateral security for the payment of the note, where the transaction was one of credit. Where the purchase price was paid immediately there was, of course, an immediate delivery of the stock. The stock was treated on the books as issued and outstanding, dividends were paid thereon, and such stockholders were entitled to the same voting privileges as all other stockholders.

Petitioner points to the fact, however, that the shares were " limited " in number and that the subscriptions therefor were " fixed at an amount which, in the opinion of the officers and directors of the company, was merited by the work performed and services rendered." The fact that the amount of stock which an employee could purchase was determined by his worth to the company does not alter the legal effect of the transaction and lends no support to the petitioner's contention that the dividends declared on the stock were compensation for services.

Aside from the foregoing considerations we are nevertheless of the opinion that the petitioner has wholly failed in its proof in that, even assuming that the amounts so credited or paid constituted additional compensation, we have no satisfactory proof that they were " reasonable " within the meaning of the statute. Some slight effort was made, it is true, at the hearing of the proceeding, to establish

the reasonableness of the amounts in question, but it was so slight and so wholly ineffective that a review of the record bearing upon the question seems useless. Therefore, for this, if for no other reason, we would be compelled to sustain the respondent's determination upon the first alleged error.

Upon the second issue we regard the record as even more incomplete. The petitioner argues that the $20,500 paid to the Pacific Fruit & Produce Co. was in consideration of that company withdrawing from competition with it, at certain points, over a period of 10 years, and that it should be permitted to deduct 10 percent annually from its gross income in the computation of its net taxable income, at the same time conceding that its former claim of 20 percent was incorrect.

The only witness offered in substantiation of this claimed deduction, after testifying to some extent about the subject matter of the acquisition of the Pacific Fruit & Produce Co. under the contract in question, finally admitted, upon examination by the respondent's counsel, that he had no knowledge of the contract whatsoever, thus rendering his testimony—which, incidentally, bore little or no significance—absolutely worthless for the purposes of the case. Petitioner relies upon the provisions of the contract itself, a copy of one of which, there having been several, we have in evidence.

The portion of the contract relied upon reads:

That the said party of the second part shall pay unto the said party of the first part the sum of twenty thousand five hundred (20,500.) dollars on the signing of this agreement, the receipt whereof is hereby acknowledged by the said party of the first part, and in addition thereto the party of the second part shall pay to the said party of the first part a sum equivalent to the wholesale market price of all merchandise sold and delivered to the said party of the second part and the book value of all furniture, fixtures, automobiles, trucks, machinery and other equipment and leases and buildings on leased premises hereby agreed to be sold and transferred, which sum, together with interest thereon at the rate of six per cent per annum computed from the dates on which possession of said branches was taken, as herein provided, shall be paid to the said party of the first part in three equal installments on March 1 June 1 and September 30, 1929, respectively.

The petitioner would have us infer, from the fact that the consideration for the purchase, as shown in the foregoing excerpt, was provided for in two parts, that the $20,500 payment was in consideration of the Pacific Fruit & Produce Co. withdrawing from competition for a period of 10 years in certain localities, notwithstanding the contract before us shows not the slightest intention of the parties thereto to set this amount aside as anything other than the initial cash payment forming a part of the total consideration for the purchase price of the vendor's business. Nor is there anything in the contract to show that any part of the consideration, much less the

amount in question, was specifically intended to stifle competition. For lack of evidence bearing upon the second issue, we must sustain the respondent's determination thereon.

Reviewed by the Board.

*Judgment will be entered for the respondent.*