*377 OPINION.
Black :
The legal principles involved in the one assignment of error in Docket No. 52270 seem to be well settled. It is petitioner’s contention, however, that, under section 204 (a) and (b) of the'Eevenue Act of 1921, it is entitled to deduct from the $2,112,774.29 consolidated net income of the affiliated organizations for 1923 the total consolidated net losses of the group as an entity for 1921 and 1922 of $1,450,212.18 and $246,953.47, respectively, after such net losses are-reduced to a combined total of $1,564,154.48 by deducting therefrom the nontaxable income of the Trustees of Lumber Investment Association for 1921 and 1922 of $79,253.15 and $53,758.02, respectively,, thus leaving a taxable consolidated net income for 1923 of $548,-619.81. In support of this contention petitioner argues that, because it and the organizations affiliated with it had agreed in writing among themselves, under section 240 (b) of the Eevenue Act of 1921, that respondent was authorized and directed to assess the tax accruing from the affiliated group for 1922 and 1923 against petitioner, this fact made petitioner the “taxpayer” as to all the tax due and owing from all the affiliated organizations as the term “taxpayer” is used in section 204 (a) and (b) ; that in any event the several affiliated organizations were in substance and reality but one corporation; and that, therefore, respondent should have looked through the form to the-substance, assessed them as one corporation, and carried forward the net losses of 1921 and 1922 as if they were the net losses of only one corporate taxpayer and deducted them from the 1923 consolidated net income. Petitioner in support .of its contention cites and relies principally upon United States v. Lehigh Valley Railroad Co., *378 220 U. S. 257; Southern Pacific Railroad Co. v. Lowe, 247 U. S. 380; and Gulf Oil Corporation v. Lewellyn, 248 U. S. 71. It should be noted at this point that none of these cases deal with the question we have here and that the right of a corporation to carry forward a net loss from one taxable year and use it as a deduction from net income in the following year is strictly a statutory concept. Its application must be made in the manner intended by Congress as expressed in the language of the statute. Therefore, we do not regard the cases cited by petitioner as authority on the issue which we have here to decide.
Respondent contends that the affiliated group is merely a tax computing unit; that, although the several affiliates may agree among themselves who is to pay the tax, each affiliate remains nevertheless a taxpayer; that section 204, supra, contains no provision for permitting a net loss sustained by one taxpayer to be availed of by another and different taxpayer; and that, therefore, we must determine the statutory net loss of each affiliate separately and allow it as a deduction in either of the two succeeding taxable years only to the extent that the affiliate sustaining the net loss has income from which the net loss may be taken. The respondent’s position on this issue is sustained. Woolford Realty Co. v. Rose, 286 U. S. 319; Swift & Co. v. United States, 38 Fed. (2d) 365; Kaiwiki Sugar Co. v. Burnet, 63 Fed. (2d) 822; Delaware & Hudson Co., 26 B. T. A. 520; affd., 65 Fed. (2d) 292; certiorari denied, 290 U. S. 670; Beneficial Loan Society, 26 B. T. A. 858; affd., 65 Fed. (2d) 759; certiorari denied, 290 U. S. 677; Seiberling Rubber Co. v. Commissioner, 70 Fed. (2d) 651, affirming a Board memorandum opinion of June 29, 1932; certiorari denied, 293 U. S. 611; Corco Oil Refining Corporation v. Helvering, 72 Fed. (2d) 177; California Wharf & Warehouse Co., 28 B. T. A. 509.

Affiliation of Park Falls Lumber Co. and Edward Hines Farm Land Co. with Trustees of L. I. A.

Consideration will now be given to assignment of error (a) raised in the amended petition in Docket No. 52274. This assignment of •error raises the question of whether the Park Falls Lumber Co. and Edward Hines Farm Land Co. were affiliated with the Trustees of L. I. A. for the period January 1, 1924, to July 31, 1926. Under section. 240 (c) of the Revenue Acts of 1924 and 1926, “* * * two or moi'e domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the voting stock of the other or others, or (2) if at least 95 per centum of the voting stock of two or more corporations is owned by the same interests.” See also section 240 (d), Revenue Act of 1926. The instant case turns *379 upon the ownership of the outstanding capital stock of the Park Falls Lumber Co. and Edward Hines Farm Land Co. The respondent determined that the stock of these two corporations was owned as follows:
[[Image here]]
On the other hand, petitioner (in Docket No. 52274) contends that the stock of said two corporations was owned as follows:
[[Image here]]
It is clear that, if petitioner’s contention that the Trustees of L. I. A. were the owners of the 2,000 shares of the Park Falls Lumber •Co. which stood in the name of Clubine is true, then the Trustees of L. I. A. were the owners of more than 95 percent of the stock of the Park Falls Lumber Co., and the twro organizations were affiliated •during the period in question under section 240. (c) (1). And it is likewise true that the Edward Hines Farm Land Co. would be a member of the affiliated group, because in such case more than 95 percent of its stock would be owned by the same interests. Sec. 240 (c) (2). See G. C. M. 8982, Cumulative Bulletin X-1, p. 250; Olds & Whipple v. Commissioner, 75 Fed. (2d) 272.
In addition to the facts heretofore set out regarding the ownership ■of the 2,000 shares determined by respondent to have been owned bj Clubine, the parties have stipulated substantially as many facts regarding the ownership of the 250 shares determined by respondent to have been owned by Gertrude W. Bennet. Petitioner contends that the 2,250 shares were owned by it, or, in other words, that it owned 100 percent of the stock of the Park Falls Lumber Co. In our narrative of some of the stipulated facts we have omitted to state any facts relative to said 250 shares, for it is at once apparent *380 that even if petitioner owned those shares, but did not own the said 2,000 shares, it owned only 94.20 percent of the stock of the Park Falls Lumber Co., which is less than the 95 percent required by the statute. Oil the other hand, if petitioner owned the 2,000 shares, but not the 250 shares, it owned 99.28 percent of the stock, or 4.28 percent more than than is necessary under the statute. Both petitioner and respondent concede in their briefs that a determination of who owned the 250 shares which stood in the name of Gertrude W. Bennet is unimportant to a decision of the question of affiliation. Since it is therefore immaterial, as far as the present affiliation question is concerned, who owned the 250 shares, we will make no further reference to them in this report. The question is thus narrowed to whether the remaining 2,000 shares of the Park Falls Lumber Co. were owned by Clubine, as respondent determined and contends, or by petitioner (Trustees of L. I. A.), as it contends.
In determining this question we of course must look to all the facts in the record. Some of these facts unquestionably support respondent’s contention. Other facts however seem to establish that it was never intended that Clubine should be the owner of this stock until it was paid for in the manner agreed upon. The stock, it is true, was placed in his name, but he immediately endorsed the certificate in blank and turned it over to the Trustees of L. I. A., to be kept by them with the agreement entered into and the note for $200,000 which he had executed. If this note for $200,000 had been intended to be unconditionally payable to the Trustees of L. I. A., then clearly it would be proper to hold that the contract was a contract of sale and that title to the 2,000 shares of stock in question passed immediately to Clubine and was merely being held by the Trustees of L. I. A. as collateral security for the payment of Clubine’s note. Handy & Harmon v. Burnet, 284 U. S. 136. But the contract and note, and the circumstances surrounding their execution, do not seem to indicate that. Clubine was unconditionally liable to pay the $200,000 note.
An analysis of the agreements of January 1, 1920, and July 17,. 1924, shows that neither party expected the note to be paid except from dividends. The provisions relating to the note are:
[Paragraph 3.] * * * in consideration whereof said party of the second part agrees to and does give to said Trustees of Lumber Investment Association his promissory note of even date for the sum of two hundred thousand dollars ($200,000.00) payable on or before five years from date with interest at the rate of five per cent per annum.
Said certificate or certificates shall be endorsed in blank by the party of the second part and shall remain in the custody of the Trustees of Lumber Investment Association as collateral security for the note hereinbefore described.
[Paragraph 4.] All dividends declared on said stock shall be applied so far as necessary, to payment of interest on said note, and the remainder, if any, shall be applied on the principal of the note.
*381 Paragraph 5 gave Clubine, or his estate, two elections in case Clubine left his employment “prior to the termination of this contract, or the payment of said note by the application of dividends thereto”, the two elections being “ (1) To purchase the said stock, or, (2) To sell it to the Trustees of Lumber Investment Association.” Then followed provisions for ascertaining value:
From the total so found shall be deducted the amount due on said note, if any, with interest at five per cent (6%) per annum from the date the amount of the note was last fixed. If the party of the second part, or his estate, as the case may be, elects to purchase the said stock, it or they shall pay to the party of the first part, the sum so found to be still due upon the said note, and shall receive the said stock and the cancelled note. If, however, the party of the second part or his estate, elects to have the1 Trustees of Lumber Investment Association purchase said stock, the said Trustees will pay to the said party of the second part, or to his said estate, the book value of the stock, less the amount due on the note as so fixed, and become the owners of the said stock; and shall cancel and return to the party of the second part, or to his estate, the said note. In case the book value of the said stock is less than the amount due on said note, the said party of the second part, or his estate, shall not be held to pay any deficiency but in that case said note shall be cancelled, as well as all claims of either party upon the other concerning the said stock.
[Paragraph 6.] If the said second party at the end of said five year period has not then fully paid for said stock according to the .method prescribed in Paragraph J¡ [i. e., dividends], the said Trustees of the said Lumber Investment Association agree that if the second party continues in the employ of the first party for a further term of five years, said Trustees will continue the said agreement in all respects for the further period of five years. [Italics ours.]
It will be noted that paragraph 6 contemplates no payments except from dividends.
[Paragraph 7:] All payments of interest and principal on said note to be made to the Trustees of Lumber Investment Association.
The agreement of July 17, 1924, does not mention the note at all, but gives Clubine, in case of his becoming incapacitated by accident or sickness, or of his death:
The additional options of, first, having the Trustees of Lumber Investment Association, their successors or assigns, hold the said stock until such a time as the dividends have paid the purchase price thereof, including both principal and interest; or, second, the option to sell the said stock to outside parties, in which case the Trustees agree to transfer the stock upon the payment of the sum due thereon at the time of said transfer.
The note itself was dated January 1, 1920, payable on or before five years, with interest at the rate of 5 percent per annum after date, and contains a clause:
This note is subject to that certain contract executed under even date between the Trustees of Lumber Investment Association and myself.
*382 Not a dollar of Clubine’s salary from the Park Falls Lumber Co. could be retained to pay on the note. No property which he may have had could have been subjected to the payment of the note. It is true that the facts show that from 1920 to 1926, inclusive, the Trustees of L. I. A. accrued on their books interest on the note at the rate of 5 percent per annum, but no interest was ever in fact collected from Clubine and all of this accrued interest was canceled in 1926, when the contract and note were canceled and turned back to Clubine. No interest on this note was properly accruable on the books of the Trustees of L. I. A., for none was payable except out of dividends of the Park Falls Lumber Co. and no dividends were ever declared and paid. t
The facts with reference to this employment contract with Clubine, carrying with it certain rights to become the owner of 2,000 shares of stock in the Park Falls Lumber Co., are very similar to those which were present in Moore v. McGrawl, 63 Fed. (2d) 593. In that case the agreement with an employee recited the sale of stock at par and the giving of a note therefor payable on demand. The court pointed out however that, while the note expressed an unconditional obligation to pay, nevertheless the real agreement was that the note should be paid out of dividends accruing upon the stock. The contract further provided that it was at the option of the employee whether he would pay for the stock, the option to last so long as he should continue to remain an employee, and the certificate of stock placed in the name of the employee was endorsed and redelivered to the company. On these facts the court held that there was no obligation on the part of the employee to pay for the stock, the agreement was lacking in mutuality, and, consequently, there was no sale or transfer of title to the stock. The court further held that a consolidated return of the parent corporation and its two subsidiary companies was proper.
To the same effect is our decision in Hennepin Holding Co., 23 B. T. A. 119. That was a case involving a claim of affiliation under the 1924 Act as here. One of the corporations claiming to be a member of the affiliated group was t-he Plymouth Clothing Co. One hundred and thirty-four shares of its stock stood in the name of H. L. Tucker, an old -employee who did not own any stock in the other corporations involved. Of the stock owned by him, we said:
* * * It is true that this stock stood on the books in the name of Tucker, but it remained in the possession of the corporation, and its issue appears to have been an incident in the carrying out of an arrangement whereby this old employee was to be permitted to acquire a stock interest from future earnings of the corporation which it was anticipated would result from his employment by it and his efforts in its behalf. This anticipation as to earnings did not bear fruit, the corporation producing -no profit for distribution, and consequently no equity was acquired by Tucker on this stock and after some years *383 the agreement was canceled and the stock turned back into the treasury of the corporation. * * *
On these facts we held that the affiliation should be allowed. Cf. W. N. Ritter Lumber Co., issue No. 8, 30 B. T. A. 231.
The facts in the instant case are distinguishable from those in Handy & Harmon v. Burnet, supra. In that case the parent corporation caused a subsidiary corporation to be organized to take over the work of one of its departments. The stock of the new corporation was issued to the extent of 20 percent to one Hamilton, who became its president. Hamilton owned no stock in the parent corporation. He w'as without funds to purchase the stock in the new corporation,, and one of the shareholders in the parent corporation arranged for him to borrow the necessary money from a bank upon his notes endorsed by the shareholder mentioned. This stockholder then received the stock under an “irrevocable stock power”, executed by Hamilton-as collateral for the payment of the notes. On these facts the' Supreme Court held that, notwithstanding the execution of this irrevocable stock power and the placing of the stock as collateral security for the .payment of the notes, Hamilton was still the beneficial owner of the stock, and disallowed affiliation.
As we have already pointed out, Clubine did not borrow the money with which to purchase the 2,000 shares in question. If he had done so and had executed his note for the borrowed money and had used the money for paying for the stock, he undoubtedly would have become the owner of the stock in question, even though he immediately placed it as collateral security for the payment of his-note, and the Commissioner’s determination of no affiliation would stand. What he did do was to enter into a contract whereby he would become the owner of the stock, if and when sufficient dividends of the Park Falls Lumber Co. were declared and paid, to pay for it. This never happened and he never became the owner of the stock. Cf. Goodhue v. United States, 17 Fed. Supp. 86.
In the Goodhue case, Goodhue was an employee of the Chicago Pneumatic Tool Co. In 1924 he entered into a contract with his employer to purchase 1,000 shares of its capital stock at $82.50 per share. Payments for the stock were to be made by crediting Goodhue’s account with one-half of any bonuses in excess of his regular salary and by the dividends actually paid by the corporation on a like amount of its outstanding stock. Interest was to be both charged and credited. The stock was not to be delivered until payments therefor “shall be sufficient to pay for the same in full, after making the adjustments above provided for.” At the trial the parties agreed that only 900 shares were involved, on which Goodhue had paid $40,240 by November 19, 1928. About that time the corporation had decided to recapitalize and there was offered and accepted by Good- *384 hue a proposition to cancel his contract of 1924 and receive for his rights to purchase the 900 shares $45,327.22 in cash and 2,935 shares of new class B stock of a value of $35 per share, or $102,725. On December 31, 1928, the certificate of incorporation was amended and in 1929 Goodhue received the $45,327.22 in cash and the 2,935 shares of new stock. Goodhue contended that he was not taxable on the 2,935 shares for the reason that he had exchanged stock in a corporation a party to a reorganization for stock in such corporation. The Court of*Claims denied this contention upon the ground that Goodhue was never a stockholder in the old corporation.
On this issue we sustain petitioner, and, as we have already pointed out in holding that the Park Falls Lumber Co. was affiliated during the period in question with the Trustees óf L. I. A., it necessarily follows that during the same period the Edward Hines Farm Land Co. was also a member of the affiliated group and is entitled to join in the consolidated return.
In arriving at the conclusion which we have reached on this issue, we have not overlooked Gardner-Denver Co., 27 B. T. A. 1171; affd., 75 Fed. (2d) 38, and A. Levy and J. Zentner Co., 31 B. T. A. 386, cited and urged by respondent in support of his contention. We think these cases are distinguishable on their facts. Each of these cases involved stock subscription plans which we held under the facts involved contracts of purchase and sale of the stock and not contracts of employment. The situation in the instant case is different in the respect which we have endeavored to point out.
The parties have stipulated as follows:
Should the Board find and determine that the Edward Hines Hardwood and Hemlock Company (name changed in 1924 from Park Falls Lumber Co.), and the Edward Hines Farm Land Company, were affiliated with the Trustees of Lumber Investment Association for the years 1924 and 1925 and the period January 1, 1926 to July 31, 1926, then, and in that event, the Board may and should find that the income of Trustees of Lumber Investment Association for the year 1926 should be increased by $48,000 and the income of said organizations for the years 1921, 1922, 1923 and 1925 should be reduced by $10,000 for 1921, $10,000 for 1922, $10,000 for 1923 and $8,000'for 1925 and the deficiencies stipulated herein, subject to- the decisions of the Board on the issues involved in the appeals, redetermined accordingly.
The facts are found by us as above stipulated by the parties and effect will be given thereto in a redotermination under Rule 50.
This leaves us now to consider petitioner’s assignment of error (b) in Docket No. 52274. This assignment of error raises the same issue except as to different taxable years as the one assignment of error in Docket No. 52270. We have decided that issue against petitioner and, for the reasons already stated, we hold against petitioner on issue (b), Docket No. 52274.
Reviewed by the Board.

Decision will he entered wnder Bule 60.