F. A. GILLESPIE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89442. Promulgated September 30, 1938.

---

674

*Harold E. Rorschach, Esq.*, and *Jack L. Rorschach, Esq.*, for the petitioner.

*Stanley B. Anderson, Esq.*, for the respondent.

**OPINION.**

DISNEY: Two questions are here presented: (1) Was $15,000 received by petitioner in 1934 taxable to him under section 22 (b) (2)

of the Revenue Act of 1934 as received under an annuity, or exempt from taxation because constituting only a return of corpus, petitioner contending that the statute is unconstitutional? (2) Was $20,000 received by petitioner's former wife during 1934 taxable to him as paid her in discharge of petitioner's marital obligations?

As to the first proposition: Section 22 (b) (2) of the Revenue Act of 1934 [1] specifically provides that amounts received as an annuity under any annuity or endowment shall be included in gross income, except the excess of amount received in the taxable year over an amount equal to 3 percent of the aggregate premiums or consideration paid for such annuity. Unconstitutionality of the act must clearly appear before we are justified in holding that it should not be enforced. *Rita O'Shaughnessy, Executrix*, 21 B. T. A. 1046. Petitioner contends that, since at time of purchase of the annuity petitioner was of the age of 60 years, and his wife, for whom an annuity was purchased at the same time out of the same lump consideration, was of the age of 56 years, and the consideration paid was of an agreed value of at least $1,417,757.50, therefore neither petitioner nor the wife could, during their lifetime, receive back the corpus of the investment, with resultant unconstitutionality of the statute; and further that in any event there should be excluded from gross income under the statute the excess of the amount received on annuity over 3 percent of the amount necessary to purchase the annuities. As to this suggestion, it seems sufficient to state that the statute does not provide for computation of the 3 percent on some amount reasonably necessary to purchase the annuity in question, but designates 3 percent of the "consideration paid for such annuity." Here the annuities were received pursuant to a contract transferring property of much greater value than the amount which would have been necessary to purchase the annuities from a life insurance company. If the amount

---

[1] SEC. 22. GROSS INCOME.

   \*      \*      \*      \*      \*      \*      \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

   \*      \*      \*      \*      \*      \*

(2) ANNUITIES, ETC.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph.

of the value of such property is the amount of "consideration paid for such annuity", then we can not, under the statute, find any other amount as the basis for computing the 3 percent. Property agreed to have a value of at least $1,417,757.50 was conveyed. The contract between petitioner, his then wife, and the company thereafter paying the annuity, conveying the property to the company recites that the annuities were to be paid "as part consideration" for the transfer of the property; whereas a companion agreement between petitioner and his then wife, executed the same day and upon the same subject, recites that "in consideration of the conveyance of said property to such corporation" they will cause the corporation to pay the two annuities. No other consideration for the property conveyance to the corporation, other than the payment of the annuities, appears in the contracts. We conclude, therefore, that the property of the value above stated was the consideration for the two annuities. The wife was to receive $25,000 per year. It is obvious that, based upon a consideration of $1,417,757.50, the 3 percent would exceed the entire amount of both annuities provided for, and exceed by a greater amount the $35,000 of actual receipts within the taxable year under the two annuities by both petitioner and his former wife, and therefore no amount remains for exclusion from gross income under the provisions of the statute—with the result that the entire amount of the annuities is taxable—provided the statute is constitutional. Obviously, it is not unconstitutional by reason of the fact that such a large amount was paid as consideration for the annuities as to leave, as above seen, no deduction or exclusion from gross income; for such situation arose because of payment for the annuities of an amount greater than they could have been purchased for, from insurance companies, and not because of the statute itself, which, by its terms, had the annuities been purchased at the prices at which they could have been obtained, would, though taxing the amount received as annuity, have allowed an exclusion of a considerable amount thereof from gross income. The result of the statute, so applied, is to permit recoupment of original cost of annuity (calculated according to life expectancies), but to require payment of tax upon what the legislative body believed to be the income ordinarily realized by the annuitant. That in this particular case the result is different is plainly not due to the statute, but to payment of an excessive price for the annuity, which demonstrates that unconstitutionality of the statute has not been shown, the corpus of the investment not appearing to have been invaded for taxing purposes. We therefore conclude that the statute is not unconstitutional, and that respondent did not err in his determination of deficiency so far as same is based upon the $15,000 annuity received by petitioner.

Was the $20,000 received by petitioner's former wife properly included in his income? The answer depends, in the first instance, upon whether his property was paid for the annuity, the income of which was received in 1934 by his former wife. It was paid for during the coverture, at a time when marital difficulties were being experienced between petitioner and his then wife, and the agreement recites that the wife gives up any claim of alimony, support, or maintenance, but this does not determine that the payment was made by him. Respondent has apparently assumed that the property transferred in payment stood in the name of and belonged to petitioner, and of course petitioner has the burden of showing otherwise. But we think he has so shown, by the only evidence before us. The record is devoid of any evidence as to who was record owner of the property conveyed, and petitioner furnished the only direct light upon the subject when he testified "It was both of our property." It is true that he had just given his mere opinion that she owned half of the property, but, without giving such expression of opinion weight, we have in the above quoted language a positive statement that the property belonged to both husband and wife. The record shows that the wife did own separate property, for on February 9, 1921, F. A. Gillespie executed a declaration of trust reciting that several years earlier he had conveyed and transferred to her the equitable title to certain interests in properties, and by the declaration of trust he recognizes his trusteeship for her for 1,995 shares of stock of F. A. Gillespie & Sons Co. out of 9,995 shares held by him for himself, wife, and sons. It is recited that the property, being acquired since marriage, is community property and is "hereby transferred each to the other as follows", pursuant to which each agrees to convey to F. A. Gillespie & Sons Co. (with certain exceptions) all property held jointly, separately standing in their names, or the names of others, in consideration of payment of annuities to each. It is plain, therefore, that the wife did contribute property in payment of the annuity received by her in consideration for the transfer, from which in 1934 she received income, and respondent's determination to the contrary is clearly error, in part at least. They both conveyed property. She signed conveyances. Though this was not community property, the owners not being domiciled in a community property state, their common ownership, shown by the husband's statement above set forth, is presumably upon an equal basis. The agreement and conveyance constituted in effect a division of property and the application by each of his or her share to the acquisition of an annuity. Certainly nothing prevented division of the property which they regarded as commonly owned, and the use thereof when divided does not constitute purchase of the annuity by the husband

pursuant to marital duty. We therefore conclude that the wife contributed the property which provided the annuity paid to her in 1934, and that therefore it is not to be included in petitioner's income.

We therefore hold that the respondent was in error in including the $20,000 received by Maud Gillespie in 1934 in petitioner's income.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

LEECH and MELLOTT dissent.