ANNA L. RAYMOND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86709.    Promulgated July 20, 1939.

*Merritt C. Bragdon, Esq., James F. Oates, Esq.,* and *Middleton Miller, Esq.,* for the petitioner.

*D. A. Taylor, Esq.,* and *F. F. Korell, Esq.,* for the respondent.

OPINION.

STERNHAGEN: 1. The petitioner omitted from gross income the annuities which she received, her theory being that she had not yet recovered her capital. The Commissioner determined that only part of the value of the securities transferred to the institutions was "consideration paid" for the annuities, and that since the amounts received by petitioner aggregated more than the "consideration paid" as he had computed it, the excess was taxable gain, Revenue Act of 1932, sec. 22 (b) (2) ; Revenue Act of 1934, sec. 22 (b) (2). He treats the excess over the consideration paid as a charitable gift.

The character of a transfer is not to be determined alone by the word used to describe it. Between the parties to an agreement it may suffice to speak generally of its "consideration"; but there is room for a further inquiry when the problem is to ascertain how much in fact served as support for the obligation and how much served otherwise. A transfer under a contract may be recognized as having more than one character, even though the contracting parties for their own purposes treat it as an entirety, *G. Wildy Gibbs*, 28 B. T. A. 18. Indeed the treasurer of the Art Institute artlessly called the entire transfer a "splendid gift." A sale of shares between a parent and child for a disproportionate price may be in part a gift in view of the circumstances surrounding it, *May Rogers*, 31 B. T. A. 994; *Donald McDonald, Jr., Administrator*, 28 B. T. A. 64; *Harry F. Robertson*, 5 B. T. A. 748. Between an employer and an employee a sale may be found to be a means of providing compensation for services, *E. D. Knight*, 28 B. T. A. 188; cf. *Delbert B. Geeseman*, 38 B. T. A. 258; *A. Levy & J. Zentner Co.*, 31 B. T. A. 386; *W. M. Ritter Lumber Co.*, 30 B. T. A. 231. A shareholder may contribute capital to his corporation by paying an exorbitant price in an ostensible purchase, cf. *Jenkins* v. *Bitgood*, 21 Fed. Supp. 250; reconsidered, 22 Fed. Supp. 16; *Pennsylvania Indemnity Co.* v. *Commissioner*, 77 Fed. (2d) 92, or receive a distribution in the guise of an excessive price in sale.

\* \* \* Certainly, where all the facts and circumstances in the case, including the express stipulation of the parties, clearly show the making and the intent to make a gift, it cannot be converted into a payment for services by inaccurately describing it, in the consummating resolutions, as a bonus. [*Bogardus* v. *Commissioner*, 302 U. S. 34.]

The terminology of the parties may not be ignored, but it has less weight than the facts and circumstances to prove the nature of the payment, *Bogardus* v. *Commissioner*, *supra;* *Alger-Sullivan Lumber Co.* v. *Commissioner*, 57 Fed. (2d) 3; *Robinson* v. *Commissioner*, 59 Fed. (2d) 1008; cf. *Commissioner* v. *Merrell*, 93 Fed. (2d) 466; *Madeira* v. *Commissioner*, 98 Fed. (2d) 556.

In the present case, Mrs. Raymond, a wealthy woman over seventy-one years of age, was not interested solely in purchasing an annuity. If she had been, insurance companies were readily available whose rates for an annuity to a woman of her years were substantially less than the amount she turned over to each institution. She made no investigation to ascertain how large an annuity she could have purchased for the securities, but only as to how much each particular charitable institution would pay her annually if she transferred them to it. This was the extent of the preliminary negotiation, if negotiation it can be called. Furthermore, there was not an isolated transaction which happened to involve a charitable corporation; each was one of a series of nine such transactions, all of which were likewise with charitable organizations. This common factor of nine such occasions is important, for it denotes a gratuitous purpose and charitable intent which give color to each. It makes it unmistakable that the petitioner was not participating in nine business transactions whereby she was giving up only an amount commensurate with what she got, but that she intended as well to make a gift. While petitioner did not testify, the inference of her donative intent is inescapable; and there is no factual evidence to gainsay it. It must be recognized no less when it is coupled with a contract than if it stood alone. Irrespective of the difficulty which may arise in any such case in measuring the gift and the cost of the annuity, it seems clear that the dual nature of the transfer must be recognized. The amalgamation in a single sum as consideration does not compel a single characterization pervading the entire amount, cf. *Anna M. Keller Estate*, 39 B. T. A. 1047. We hold, therefore, that the transfers were in part consideration paid for an annuity and in part a gift.

*Continental Illinois Bank & Trust Co.* v. *Blair*, 45 Fed. (2d) 345, is essentially at variance with the later Supreme Court decision in *Helvering* v. *Butterworth*, 290 U. S. 365, and has not been followed since, *Michael Fay et al., Executors*, 34 B. T. A. 662; *Sallie Cosby Wright*, 38 B. T. A. 746.

*F. A. Gillespie*, 38 B. T. A. 673, cited by the petitioner, does not reach this case. The taxpayer there contended that the exorbitant price paid for the annuity was *ipso facto* greater than the "consideration paid." The large amount alone was relied upon to support that view. No part of the transfer was a gift or shown to be other than the cost of the annuity. The decision is no authority for saying that an excessive price must be adopted as the consideration paid for an annuity, but only that to limit the "consideration" to part of the transfer requires evidence showing a different character for the excess.

The testimony of persons speaking for the several charitable organizations all shows that the institutions were not making a busi-

ness of selling annuities, that such contracts as these were few and that they could not afford to and would not make an annuity contract with petitioner upon terms as favorable to her as she could get from an insurance company, the point being that the amount received was regarded by them as the consideration for the annuities. This, however, does not determine the result here. To hold, as we do, that the amount transferred by the petitioner under the designation of consideration for the annuities is in reality partly a gift, is of no moment to the donee. The legal characterization of the transfer is not of the essence of the contract; it manifestly did not and would not influence the institution's promise. There is no reason to suppose that the promise would have been refused if the petitioner had categorically offered to make two simultaneous transfers, one for an annuity and one as a gift. It is of slight importance that the entire amount received by the charity was treated as the foundation for the annuity. The transfer having been made, it is hard to see how its characterization can have any substantial significance for the charity. But in any event the question between the Government and the taxpayer is not dependent upon the institution's conception of the contract.

Whether the charities would have competed with the insurance companies is also without significance. Probably they would not. Probably also the petitioner would not have dealt with an insurance company in any event, for she was obviously desirous of benefiting these charities. But again this does not require that for the purpose of taxing income to her the Government must measure the consideration by the amount the charity might have required. The word "consideration" is not a crystal, cf. *Towne* v. *Eisner*, 245 U. S. 418.

It is said that since the length of petitioner's life was inevitably conjectural the price paid for the annuity was no more than a reasonable consideration. This idea proceeds from the testimony of representatives of the institutions as to the reason why they must charge more for an annuity than an insurance company. But it works both ways, as well to curtail the annuities if petitioner's life ends earlier as to enlarge them if her life is prolonged. There is nothing in the evidence to show that she measured this chance or gave it consideration. Her intent to make a gift must be determined from the circumstances which impinge upon her and not from the reasoning of the managers of the institutions.

No matter what may be the dialectics, the fact persists that petitioner intended to make gifts to these several charities and elected to do so in conjunction with contracts for annuities. This can not be escaped by treating the consideration paid for the annuity as a blanket covering the gift. The doctrine that the determination must be based on what was done and not on what might have been done,

does not help the petitioner, for the present conclusion is in accordance with that doctrine. What was done was not only to purchase annuities but also to make the gifts.

2. To hold that part of what petitioner transferred to each of the charities was a gift requires that the amount of the gift be fixed. The Commissioner fixed it by taking the consideration paid for the annuity to be the commuted value figured according to Regulations 80, article 10, which relates to estate taxes. That table is shown to be outmoded. It adopts the so-called "Actuaries' or Combined Experience Table of Mortality," a table prepared in Great Britain in 1843 from experience data which have long since been regarded in this country as obsolete. The evidence shows that a later table called the "American Annuitants' Mortality Table" is a more approved table and is now commonly in use among insurance companies in the United States. Although any mortality table, being derived entirely from average experience, is necessarily speculative in its application to a given individual, it may not be discarded for that reason unless there is something better, Simpson v. United States, 252 U. S. 547. The uncertainty as to the date of death is unlike the annual uncertainty of the yield of minerals in Burnet v. Logan, 283 U. S. 404, and does not preclude a reasonably certain valuation of the investment or a tax upon the income.

Taking the American Annuitants' Mortality Table as the most approved table available, as shown by the evidence, the petitioner's expectancy at the dates of the several agreements can readily be computed to arrive at the reasonable cost which petitioner would have paid to the five leading insurance companies for the annuities which she bought, May Rogers, supra. This figure in each instance is to be regarded as the consideration paid for the annuities. So much is to be taken under the Revenue Act of 1932 as the untaxed recoverable amount.

The table in the findings shows that the annuities received by petitioner in 1933 did not bring the aggregate above the consideration paid, and hence there is no amount of the annuities subject to tax in 1933.

For 1934 the decision is controlled by the later statute, Revenue Act of 1934, sec. 22 (b) (2). Under this statute the annuity is taxed to an amount equal to 3 percent of the consideration paid; after the tax-free amounts of the annuities aggregate the amount of the consideration paid, the excess received is taxable. The table in the findings shows that the first seven annuities included amounts above the consideration paid, while the last two were still short of the consideration. Thus of the first seven annuities received, the amounts shown in the last column must be included in petitioner's taxable income of 1934. Of the remaining two, only so much shall be included in income as

is equal to 3 percent of the consideration paid, as that consideration shall appear in the computation approved above.

3. The petitioner assails as unconstitutional the tax imposed by the 1934 Act upon 3 percent of the consideration. This contention has been rejected in *F. A. Gillespie, supra,* and we adhere to that decision. The uncertainty of petitioner's length of life prevents the conclusion that she will not recover the cost of her annuity, and Congress may no doubt prescribe a reasonable formula for dividing each annual amount between income and restoration of capital. There is no reason to say that the 3 percent assigned to income is an unreasonable allocation, since, as said in the *Gillespie* opinion, it conforms to "what the legislative body believed to be the income ordinarily realized by the annuitant." Going deeper, it is not yet clear whether an annuity is to any extent outside the term "income" in the Sixteenth Amendment.[1] The doubt is enough to prevent this Board's holding that the tax upon part of the annuity is a direct tax upon property by reason of its ownership and invalid if not apportioned, or so arbitrary as to be a capital levy in the guise of an income tax.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

BLACK, dissenting: I respectfully dissent from the majority opinion. In the view that I take of the law and the facts of this case, petitioner is taxable on the annuities received in 1934 to the extent of 3 percent of the principal amount paid for each annuity.

I agree to the conclusion reached by the majority that none of the annuities received by petitioner in 1933 are taxable to her under the provisions of section 22 (b) (2), Revenue Act of 1932. But in calculating whether the aggregate amount of the payments which petitioner has heretofore received exceeds the amounts paid as consideration for the annuity contracts, I do not agree that the basis of cost of the annuity contracts is what the insurance companies would have charged for similar annuity contracts.

It is this difference which furnishes the ground for my differing from the majority opinion on the amount which is taxable for the year 1934, under section 22 (b) (2) of the 1934 Act.

The conclusion of the majority as to what is taxable in 1934 is based upon the finding that part of the property transferred by Mrs. Raymond to the respective charitable and educational institutions represented gifts to such institutions and that part represented consideration for the annuity contracts. I do not subscribe to the

---

[1] In some of the states and in Great Britain an annuity is taxed as income, Magill. Taxable Income, p. 367 *et seq.*

theory that the evidence justifies such a finding. Cf. *Madeira* v. *Commissioner*, 98 Fed. (2d) 556. The fact that similar annuities could have been purchased from insurance companies at a less price than petitioner paid these educational and charitable institutions, it seems to me is not material.

Outside of the first annuity of $5,000 evidenced by letters on July 24, 1925, with the Art Institute of Chicago, the remaining eight annuity agreements were evidenced by formal written contracts executed by the petitioner and the respective institutions. The following agreement with the Field Museum of Natural History, dated July 27, 1925, is given in petitioner's brief as typical. This reads as follows:

THIS AGREEMENT, Made and entered into this 27th day of July, A. D. 1925, by and between ANNA L. RAYMOND, of Chicago, Illinois, the party of the first part, and FIELD MUSEUM OF NATURAL HISTORY, a corporation organized and existing under and by virtue of the laws of the State of Illinois, the party of the second part,

WITNESSETH THAT:

The parties hereto, each in consideration of the covenants and undertakings on the part of the other hereinafter contained, covenant and agree to and with each other as follows:

FIRST: The party of the first part covenants and agrees, simultaneously with the execution and delivery of this agreement, to duly assign, transfer and deliver to said party of the second part, as its own absolute property, each and all the following described securities, to-wit:

All those bonds specifically described in Schedule A, hereto annexed.

SECOND: Said party of the second part, in consideration of, and from and after the transfer to it of the securities hereinabove scheduled by said first party, covenants and agrees to pay to said party of the first part in each and every year during her natural life an annuity in the sum of Fifteen Thousand Dollars ($15,000), in equal quarterly installments of Thirty-seven Hundred Fifty Dollars ($3750.00) each, on the first day of each of the months of July, October, January and April in each year, the first payment to be made on the first day of October, A. D. 1925.

THIRD: That upon the transfer and delivery of said securities in accordance with this agreement, said securities shall become and be the absolute property of said second party without any limitation or qualification whatever, and further, that from and after the transfer and delivery of said securities to said second party its obligation to pay said annuity to said first party shall become and be binding and effective, and shall so continue during said first party's natural life, free from any qualifications or limitations, and regardless of whether or not said securities, or the property in which the proceeds therefrom may be invested, or the income therefrom, shall at any time be diminished or altogether cease.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed under seal all on the day and year first above written.

[Signed]   ANNA L. RAYMOND

FIELD MUSEUM OF NATURAL HISTORY
By STANLEY FIELD
*President*

Notwithstanding the foregoing contract between the parties, the majority opinion holds that the transfer made by Mrs. Raymond to the Field Museum in consideration of that institution agreeing to pay her an annual life annuity of $15,000 was in part consideration paid for an annuity and in part a gift. In *F. A. Gillespie*, 38 B. T. A. 673, we rejected such a contention, and I do not agree with the majority opinion in saying that the *Gillespie* case is distinguishable in its facts from the instant case. The amount that was paid as consideration for the annuity is found by the majority opinion to be that which would have been paid to the five leading insurance companies under the American Annuitants' Mortality Table. The balance of the value of the transfer is found as the amount of the gift.

It seems to me, as I have already said, that in the face of the contract between the interested parties, such a finding is not justified. The property transferred to Field Museum by petitioner in consideration of the $15,000 annuity agreed to be paid her was valued at $302,150 at the time of transfer. Assuming this to be the consideration paid for the annuity, as I do, then 3 percent of this principal amount would be taxable to petitioner in 1934, which would be $9,064.50. The balance of the $15,000 would not be taxable but would be applied under section 22 (b) (2) of the 1934 Act to the principal amount paid for the annuity until such amounts added to the amounts already received tax-free equals the aggregate premiums or consideration paid for such annuity.

The discussion which I have given above as to the annuity agreement between petitioner and the Field Museum would, I think, apply equally to the other annuity agreements.

I am in agreement with the majority opinion following *F. A. Gillespie, supra*, that the tax imposed by the 1934 Act upon 3 percent of the consideration is constitutional.