Max Manne v. Commissioner.
Manne v. Commissioner
Docket No. 4702.
United States Tax Court
1945 Tax Ct. Memo LEXIS 184; 4 T.C.M. (CCH) 557; T.C.M. (RIA) 45185; May 28, 1945
Karol A. Korngold, Esq., 208 North Broadway, St. Louis 2. Mo., for the petitioner. Harlow B. King, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: This proceeding is brought for a redetermination of deficiencies in petitioner's income tax for the years 1940 and 1941 in the amounts of $353.71 and $1,425.82, respectively. The original deficiency was based on three items, one of which was not urged in the petition, and, on the second, respondent now concedes that petitioner is entitled to the $1,000 deduction claimed by him for traveling and entertainment expenses. The remaining issue is whether petitioner is taxable on portions of amounts received by him in the years in question *185 under section 22(b)(2) of the Internal Revenue Code. As to the latter, petitioner's contentions are that the contracts purchased by him are such that the income received was not annuity income and that in any event in this particular situation the section is unconstitutional in that it imposes a tax on a return of capital. The facts stipulated by the parties are hereby found. They show the following: [The Facts] Petitioner is a resident of St. Louis, Missouri, and he filed his income tax returns for 1940 and 1941 with the collector of internal revenue for the first district of Missouri at St. Louis. During the year 1940 petitioner purchased nine contracts with insurance companies referred to in the stipulation as "Contracts of Insurance," but in their own terms as "Annuity" contracts. The aggregate consideration for the nine contracts was $60,000. Each contract was issued on the basis of representations contained in the applications signed by petitioner and no physical examinations were required or taken of petitioner. The consideration for each contract was paid in cash by petitioner in a lump sum on the dates of issuance. Each contract recites that *186 it is based upon the stated age of petitioner and provides for specific annuity payments to him periodically during his lifetime which are to be adjusted if it develops that the assumed age is incorrect. Petitioner received annuity payments aggregating $1,752.35 from the issuing companies during the year 1940, being for the portion of that year for which payments were due, and $2,964.24 during the year 1941, which is the amount petitioner is entitled to receive each year. Each contract provides that if the total annuity payments to petitioner during his lifetime shall be less than the single premium of the respective contract, then after the death of petitioner, like payments shall be made to designated beneficiaries until the total amount of all payments equals the single premium. The four contracts with Massachusetts Mutual Life Insurance Company, inter alia, provide: "The reserves under this annuity contract shall not be less than those computed upon the Combined Annuity Tables of Mortality with interest at the rate of three and one-half per cent, per annum." The three contracts with The Connecticut Mutual Life Insurance Company contain similar statements, the factors being *187 the American Annuitants Mortality Table and 3 percent compound interest. The two contracts with New England Mutual Life Insurance Company and Guardian Life Insurance Company each also contain similar statements, the factors there being the Combined Annuity Table and 4 percent per annum interest. The payments to be made under the annuity contracts were computed with regard to the age and life expectancy of petitioner. In one instance an endorsement changed the amount of the payment to petitioner by reason of a correction in the date of petitioner's birth. Petitioner was born December 20, 1890, and his life expectancy at the time the policies were issued was 21 1/2 years. From evidence adduced at the hearing we find that after one year's service in World War I petitioner was released because of a heart condition and has since been receiving compensation from the Government. Petitioner insists that respondent's effort to tax him on the proceeds of the contracts in question should fail for two related reasons, first, because the payments are not annuities as that term is used in section 22(b)(2) of the Internal Revenue Code, [1] and second, because if applicable *188 to the present facts, that section is unconstitutional. We think it clear, however, that the payments in question were annuities and that petitioner's situation differs in no material degree from the numerous cases where the constitutionality of the provisions has repeatedly been upheld. Anna L. Raymond, 40 B.T.A. 244, affirmed (C.C.A., 7th Cir.), 114 Fed. (2d) 140, certiorari denied, 311 U.S. 710; Title Guarantee & Trust Co., Exec., 40 B.T.A. 475; F. A. Gillespie, 38 B.T.A. 673. It is apparent from the terms of the contracts themselves that they were supported *189 by reserves computed by reference to petitioner's expectancy of life and to an assumed interest rate varying from 3 to 4 percent, which there is no reason to doubt had some relation to the single premium paid. Petitioner's life expectancy is stipulated but it does not appear from what mortality tables the figure was derived. Much of the apparent unlikelihood that the original premium will be recovered may be explainable by a variance in the tables used by the insurance companies on the one hand and the parties to this proceeding on the other. We may take notice "that insurance companies adopt different mortality tables for computing the premium on life insurance from those used to establish the cost of annuities." Henry F. du Pont, 2 T.C. 246, 259. As in all such cases, it is impossible to say as of the present time whether petitioner will eventually succeed in recovering the single premium he paid in, as well as the assumed interest. He may, in fact, have made an unprofitable bargain as the ultimate story unfolds. But this has never been thought to prevent a payment under such contracts from being considered an annuity nor as precluding the tax upon a portion of the *190 annual payment as the assumed return upon the principal invested; and this is so even though it appears impossible for the principal to be returned. F. A. Gillespie, supra."It is well known that an annuity is calculated to yield a recipient who lives out his expectancy a total amount equal to the consideration paid, plus interest thereon. Hence, each annual payment, from the actuarial point of view, is made up partly of a return of capital and partly of income." Magill "Taxable Income," 375, quoted with approval in George H. Thornley, 2 T.C. 220, reversed other issues (C.C.A., 3rd Cir.), 147 Fed. (2d) 416. We are unable to conclude that respondent's action in taxing to petitioner 3 percent of the premium paid for the annuity contracts was unauthorized by the provisions of the revenue acts or that these provisions are beyond the constitutional power of Congress. In view of the concession by respondent. Decision will be entered under Rule 50. Footnotes
1. "* * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *"↩