Estate of Bertha F. Kann, Deceased, G. H. Kann, W. L. Kann and A. Leo Weil, Jr., Co-Executors v. Commissioner.
Estate of Bertha F. Kann v. Commissioner
Docket No. 8977.
United States Tax Court
1947 Tax Ct. Memo LEXIS 121; 6 T.C.M. (CCH) 913; T.C.M. (RIA) 47226; July 31, 1947
F. T. Weil, Esq., for the petitioners. Homer F. Benson, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding was brought for a redetermination of deficiencies in income tax of $29,438.27 and $637.16 for the years 1939 and 1940, respectively. The primary issue is whether a transaction between petitioner's decedent and her children, pursuant to which decedent transferred certain stock to the respective children and obtained from them a promise to pay her an annuity, resulted in long-term capital gain. Findings of Fact The stipulated facts are hereby found accordingly. They disclose the following: Petitioners are the co-executors of the *122 Estate of Bertha F. Kann, deceased. The returns for the periods here involved were filed with the collector for the twenty-third district of Pennsylvania. On February 7, 1939, decedent obtained eight annuities by entering into written contracts with eight of her children and their respective spouses. Under the terms of these annuity contracts decedent transferred to each child and spouse 140 shares of common capital stock of the Pittsburgh Crushed Steel Company, disposing of an aggregate of 1,120 shares, for which each child and spouse agreed to pay decedent $3,084 per annum for life, or an aggregate annual payment of $24,672. The respective agreements recited that decedent desired to sell some of her stock in the Pittsburgh Crushed Steel Company in order to purchase life annuities for herself; and that it was the desire of decedent's children to retain a family stock control of the Pittsburgh Crushed Steel Company. It was agreed that in exchange for the 140 shares of stock the annuity, as above recited, would be paid, the agreement to "remain in full force and effect during the lifetime of the Seller and during her said lifetime * * * [to] be binding upon the heirs, executors *123 and administrators of the Buyers." On February 7, 1939, decedent was 77 1/2 years of age, and, in accordance with the American Annuitants Mortality Table, the value of a $1,000 single premium life annuity amounted to $113.14 on an annual basis. According to the foregoing tables it would require a total consideration of $218,066.11 to derive annual installments of $24,672. During the years 1939 and 1940, inclusive, the decedent received through the annual annuities of $24,672 the total sum of $59,344 [$49,344?]. In her income tax returns for the years 1939 and 1940 decedent did not include as taxable income to her any portion of the annuities which she received. Petitioners, upon ascertaining that decedent had not included in her income tax returns as taxable income 3 percent of the consideration which decedent paid for the annuities in accordance with the provisions of section 22(b) (2), Internal Revenue Code, caused amended returns to be filed, in which decedent's income was increased by the sum of $6,541,98 for each of the years 1939 and 1940, this sum being 3 percent of $218,066.11. The executors of decedent's estate paid the additional tax reflected *124 by the amended returns. The value on February 7, 1939, of decedent's Pittsburgh Crushed Steel Company stock was $215 per share, or $240,800 value for the 1,120 shares transferred. Decedent's basis for 826 (1120 less 294) shares of the stock transferred is 826 / 2492 of $66,882.06. Respondent arrived at the deficiencies involved by determining that decedent realized long-term capital gains in the aggregate amount of $96,434.92 in 1939 upon the transfer of 1,120 shares of Pittsburgh Crushed Steel Company stock to her children, and by including in the income for 1939 the amount of $7,224, representing 3 percent of the cost to decedent of the annuity contracts (an aggregate cost of $240,800) as constituting taxable income for that year in accordance with section 22(b) (2), Internal Revenue Code. Respondent also determined for 1940 that the amount of $7,224 constituted taxable income for that year under section 22(b) (2). The promises and agreements of decedent's respective children and their spouses to pay her the amounts above mentioned in consideration of the transfer of the Pittsburgh Crushed Steel Company stock to them, as evidenced by the contracts of *125 February 7, 1939, had no fair market value on that date. Opinion There seems little to be gained by departing at this late date from a principle so well established as that an agreement by an individual to pay a life annuity to another has no fair market value for purposes of computing capital gain. J. Darsie Lloyd, 33 B.T.A. 903. Both the annuitant's life span and the other party's ability to pay are uncertain and contingent, and this seems to be essentially a rule of law, independent of actual proof of the financial capacity of the one making the promise. Frank C. Deering, 40 B.T.A. 985; see Burnet v. Logan, 283 U.S. 404. At any rate, this record is equally favorable to petitioner and warrants our finding that there was no such fair market value. See Bella Hommel, 7 T.C. 992. Whether the entire capital is to be recouped before any amount becomes taxable, J. Darsie Lloyd, supra; Frank C. Deering, supra; or a 3 percent annual return on an investment computed at insurance company rates under Anna L. Raymond, 40 B.T.A. 244, affirmed (C.C.A., 7th Cir.), 114 Fed. (2d) 140, certiorari *126 denied, 311 U.S. 710, is to be charged as ordinary income under Internal Revenue Code, section 22(b) (2), until the capital has been recovered, see Maud Gillespie, 43 B.T.A. 399, reversed other issues (C.C.A., 9th Cir.), 128 Fed. (2d) 141, we need not now decide. Such a tax was paid for each year by petitioner's decedent, and on the one hand petitioner does not contend for an overpayment, nor, on the other, can the excess over insurance company rates be treated on this record as the consideration paid rather than as a gift. Maud Gillespie, supra, affirmed this issue (C.C.A., 9th Cir.), 128 Fed. (2d) 141. Respondent makes no effort to distinguish the Lloyd, Deering, Mommel, or Gillespie cases. He refuses to recognize any distinction between the purchase of an annuity in an arm's-length business transaction from an insurance company dealing customarily in such contracts, and a case, like the present, where a mother transfers property to her children in return for their promise to make annual payments during her life. But such a distinction is the compelling rationale of the cases cited, including *127 that of Anna L. Raymond, supra, upon which respondent relies. We conclude that, in transferring the securities to her children for their annuity contracts, decedent realized no gain, even if insurance company rates for such contracts would have exceeded her basis for the securities; and that, since the payments she received up to the end of the instant years did not equal her basis, and she reported a sum equal to 3 percent of insurance company rates as ordinary income for each year, no additional tax is due for either year. The parties are agreed that with this treatment of the proceeding, it becomes unnecessary to consider the basis of the 294 shares. Decision will be entered under Rule 50.