TITLE GUARANTEE AND TRUST COMPANY, EXECUTOR, ESTATE OF MARY A. BEDFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88006. Promulgated August 18, 1939.

*Holt S. McKinney, Esq.*, for the petitioner.
*Conway Kitchen, Esq.*, for the respondent.

OPINION.

MELLOTT: Section 42 of the Revenue Act of 1934 [1] requires that amounts accrued up to the date of the death of a decedent be included in computing his net income for the taxable period in which falls the date of his death. Pursuant to this section the respondent has included in decedent's income for the period from January 1 to March 16, 1934, the interest upon the Prudence Co. bonds. Some of the interest, as shown by our findings, was represented by coupons due but unpaid and some by coupons attached to bonds in the trust estate but which were not yet due. The parties upon brief make no distinction between the two classes, and we shall make none. Petitioner contends that none of the interest should be accrued because at the time of the death of decedent "there was then not only a lack of certainty as to future payments of interest * * * but it was then highly probable that a substantial part of the principal investment would never be paid." In other words, it relies upon the rule, frequently enunciated and applied by the courts and this Board, that income need not be accrued when there is a substantial doubt as to its collectibility. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417; *Burnet* v. *Logan*, 283 U. S. 404; *Turners Falls Power & Electric Co.*, 15 B. T. A. 983; *Great Northern Railway Co.*, 8 B. T. A. 225; affd., 40 Fed. (2d) 372; certiorari denied, 282 U. S. 855; *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34; *American Central Utilities Co.*, 36 B. T. A. 688; *Seattle First National Bank* v. *Henrickson*, 24 Fed. Supp. 256; appeal dismissed, 100 Fed. (2d) 1015. Many of the cases bearing upon the general question are collated in the last cited case.

Respondent contends that on the date of the death of the decedent there was every reasonable expectation not only that the interest would be paid but also that the bonds would be paid in full at maturity. He determined the deficiency in tax on that theory and his determination is presumptively correct. The question, therefore, is primarily whether or not petitioner's proof has been sufficient to overturn the presumption. We think that it has not been.

---

[1] SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED.

The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period.

We have set out in our findings not only facts material to the issue but also several based upon evidence the materiality of which is doubtful. .The subsequent reorganization of the Prudence Co., the finding of the court that it was insolvent in 1938, and the ultimate loss through the exchange of the bonds in the trust for bonds and cash having a lesser aggregate fair market value—events occurring .several years after decedent's death—furnish very little aid in determining whether or not, at the time of decedent's death, there was no likelihood that the interest would be paid. Offsetting any slight doubt which might arise from such circumstances is the fact that the coupons which were due at the time of her death were paid shortly thereafter, while the coupons not then in default were also paid within a few months. The amounts paid were—and we think properly—credited by the trustee to income. Under the circumstances existing at the date of the death of the decedent, we think the trustee would have been unduly pessimistic if it had considered the Prudence Co. to be insolvent or if it had determined that the interest then due was uncollectible. It is somewhat significant that the trust officer who was called as a witness in the instant proceeding gave no intimation that he had any such feeling on the date of decedent's death. On the contrary he caused all of the interest, when collected, to be credited to trust income.

We are of the opinion, and hold, that the respondent did not err in including the interest upon the Prudence Co. bonds in the gross income of the decedent for the period in question.

The remaining issue is the taxability to the estate of Mary A. Bedford of a portion ($4,208) of the amount received by her as an annuity ($8,750). Respondent has held that such amount must be included in her gross income under section 22 (b) (2) of the Revenue Act of 1934 [2] and article 22 (b) (2)-2 of Regulations 86.[3] Petitioner

[2] (2) * * * Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to three per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *

[3] ART. 22 (b) (2)-2. *Annuities.*—Amounts received as an annuity under an annuity or endowment contract include amounts received in periodical installments, whether annually, semiannually, quarterly, monthly, or otherwise, and whether for a fixed period, such as a term of years, or for an indefinite period, such as for life, or for life and a guaranteed fixed period, and which installments are payable or may be payable over a period longer than one year. If an annuity is payable in annual installments, there shall be included in gross income only such portion of the amounts received in any taxable year as is equal to 3 percent of the aggregate premiums or consideration paid for such annuity, whether or not paid during such year. If an annuity is payable in two or more installments over each 12-month period, such portion of each installment shall be taxable as is equal to 3 percent of the aggregate premiums or consideration paid for such annuity, whether or not paid during the taxable year, divided by the number of installments payable during such year. As soon as the aggregate of the amounts received and excluded from gross income equals the aggregate premiums or consideration paid for such annuity, the entire amount received thereafter in each taxable year must be included in gross income. * * *

contends that none of the amount represented taxable income to the decedent; that the amount which she received was a bequest from the estate of her deceased husband; that the amount expended by the husband in the purchase of the annuity had been included in his gross estate and the tax upon it had been paid; that even if the amount paid for the annuity had not been included in the husband's estate the amount received by the wife would still be exempt as a gift; and that section 22 (b) of the Revenue Act of 1934 is unconstitutional because it arbitrarily fixes as income, and imposes a tax upon, 3 percent of the total cost of purchasing the annuity.

We have heretofore expressed the opinion that the statute is constitutional. *F. A. Gillespie*, 38 B. T. A. 673; *Anna L. Raymond*, 40 B. T. A. 244. The discussion and reasoning contained in those opinions need not be repeated. Petitioner's argument will, however, be stated and discussed.

Petitioner cites the definition of income contained in *Eisner* v. *Macomber*, 252 U. S. 189, and *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170, and says that the 3 percent of the cost of an annuity, taxed under section 22 (b) (2), *supra*, does not come within such definition; that it does not represent actual gain, is not severed from capital, or received or drawn by the taxpayer for his separate use and disposal; and that it is simply an arbitrary figure, determined by a mathematical formula. It concludes its argument with the assertion that "if Congress has the arbitrary power to tax 3% of the cost of an annuity as *income* it would also have the power to tax 93% of the cost as *income*," which, it asserts, demonstrates the unconstitutionality of the section.

The argument loses much of its apparent force when the taxation of annuities and the antecedent history of the section is considered. Under the Revenue Acts from 1918 to 1926 (sec. 213, Act of 1918) the amount received by the insured as a premium or premiums paid by him under life insurance, endowment or annuity contracts was not required to be included in gross income. By amendment in 1926 (sec. 213 (b) (2), Act of 1926) it was provided that "Amounts received * * * under a life insurance, endowment, or annuity contract [should not be included in gross income]; but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid * * * then the excess shall be included in gross income." This resulted, as pointed out by the Ways and Means Committee (Rept. No. 704, 73d Cong., 2d sess., p. 21) in "an increasing amount of capital going into the purchase of annuities, with the result that income taxes are postponed indefinitely." To remedy that situation

section 22 (b) (2) was enacted, placing "the return of this form of investment on the same basis as other forms of investment by taxing that portion of each payment which in fact constitutes income." (Ways and Means Committee report, *supra*. See also Report of Finance Committee, No. 558, 73d Cong., 2d sess., p. 23.) The same Congress enacted section 22 (b) (1), providing that "Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise, (shall be exempt from taxation); but if such amounts are held by the insurer under an agreement to pay interest thereon, the interest payments shall be included in gross income." The report of the Finance Committee, *supra*, states that this section "makes it clear that the proceeds of a life insurance policy payable by reason of the death of the insured in the form of an annuity are not includible in gross income."

An annuity has been defined to be "an allowance or payment from the income of a fund at specific periods and during a prescribed term"; *Continental Illinois Bank & Trust Co.* v. *Blair*, 45 Fed. (2d) 345; "the obligation by a person or company to pay to the annuitant a certain sum of money at stated times during life or a stated number of years in consideration of a gross sum paid for such obligation." *Security Trust & Savings Bank, Trustee*, 11 B. T. A. 833, 835. "Payments to annuitants are, in fact, based upon mortality tables which purport to reflect a rate of return sufficient to enable the annuitant to recover his cost, and in addition thereto a low rate of return on his investment." Report of Finance Committee, *supra*. This was the concept of Congress when the Senate concurred in the House Bill, which, as pointed out in the Report of the Finance Committee, "continues the policy of permitting the annuitant to recoup his original cost tax-free but requires him to include in his gross income a portion of the annual payments in an amount equal to 3 percent of the cost of the annuity."

We are of the opinion that Congress clearly had the power to enact the legislation and that in doing so it did not act arbitrarily. It is perhaps not inaccurate to say that such enactment merely gave legislative sanction to a rule frequently applied in tax cases, i. e., that an amount received may be, and frequently is, in part a return of capital and in part gain, in which event only the part which is gain is taxable. Cf. *Guaranty Trust Co. of New York, Executor*, 15 B. T. A. 20, 25. Although the 3 percent specified in the act may not be the exact amount which will, in every instance, be realized as income, it is no doubt as close an approximation as can be made. In any event it is not so grossly out of line as to justify a conclusion that it was "arbitrarily" fixed. We conclude and hold that the section is not unconstitutional.

Petitioner emphasizes the fact that the value of the annuity in the instant proceeding was included in the estate of the donor, Edward T. Bedford, and subjected to Federal estate tax. It argues that it therefore constitutes, under the tax law, a part of the donor's gross estate and, for the purposes of taxation, must be deemed to be a bequest to Mary A. Bedford. The fact that the value of the annuity was included in the gross estate of the deceased husband is, in our opinion, immaterial. It was included because he, prior to his death, had made a gift in contemplation of death which was a substitute for testamentary disposition. The fact that it was thus treated for estate tax purposes does not make the total amount received by the wife a bequest though it is true that a portion of it falls within this classification. While the contracts were not introduced in evidence, apparently as a result of the husband's investment of $280,533 the wife and children acquired the right to receive over a period of years amounts which eventually would exceed the amount invested. If the husband had filed a gift tax return at the time the gift was made, the amount includible therein would have been the then present worth of the right to receive the payments over the period of years specified in the contract. This, in all probability, would not have exceeded the cost of the contracts, even though a larger amount would ultimately be paid by the insurance company to the annuitants. The difference, or the excess over the amount paid in, is interest paid by the insurance company for the use of the amount invested. If Mary A. Bedford and her children—donee-annuitants—include within their gross income the interest to be received upon the sum invested by the deceased husband and father for their benefit, they will receive the principal sum tax-free as provided in section 22 (b) (3);[4] but if the interest upon the amount is not included in their gross income it entirely escapes taxation. This result was never contemplated by Congress when it enacted section 22 (b) (3), *supra*. The section, it will be noted, specifically requires that the income from property received as a gift, bequest, devise, or inheritance must be reported for taxation. A careful analysis of the three sections discloses that Congress had the same thought in mind in enacting each—in effect to permit the receipt of the insurance, gift, or principal of an annuity without tax, but to tax the amount received as income. There is nothing in the legislative history to indicate that Congress intended to place the recipient of an annuity in any more

---

[4] (b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this title:

\*        \*        \*        \*        \*        \*        \*

(3) GIFTS, BEQUESTS, AND DEVISES.—The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income).

favorable position than the donee of a gift, who realizes income through its investment, or than one who, being entitled to receive insurance upon the life of another, chooses to allow it to be held by the insurer under an agreement to pay interest.

We have not overlooked petitioner's argument based upon *Burnet* v. *Whitehouse*, 283 U. S. 148, and *Helvering* v. *Pardee*, 290 U. S. 365. In the former the will of a deceased husband had provided for the payment to his wife of a definite sum annually, "payable at all events during each year so long as she should live." The court distinguished the case upon its facts from *Irwin* v. *Gavit*, 268 U. S. 161, in which payments were to be made out of income, and upheld this Board in its determination that the payments were bequests and exempt from the income tax. *Helvering* v. *Butterworth*, 290 U. S. 365, held that the election by a widow to accept the benefits of a will rather than to take under the state statutes of descent and distribution did not constitute the purchase by her of an annuity. *Helvering* v. *Pardee* applied the rule of the other two cases and held (1) that the widow's election to accept the annuity granted by her husband's will did not constitute the purchase by her of an annuity and (2) that she was not subject to tax upon the amounts, since "her claim was payable without regard to income received by the fiduciary." Cf. *Mary Ink*, 35 B. T. A. 846.

It should be borne in mind that the cited cases do not exempt income from taxation. As the Supreme Court pointed out in the *Butterworth* case, "The evident general purpose of the statute was to tax in some way the whole income of all trust estates" and "Congress did not intend any income from a trust should escape taxation unless definitely exempted." The issue was whether the amount admittedly received was taxable to the recipient as income distributable to her (see sec. 162, Revenue Act of 1934 and corresponding section of earlier acts), as a result of which the fiduciary was entitled to credit against the tax otherwise payable by it upon the "net income of the estate or trust", or whether it was taxable to the fiduciary as its income. Under the facts before us there is no "estate or trust" to be taxed upon the income received from the insurance company as interest. Unless it is included in the gross income of the one who receives it, it escapes taxation altogether.

It may well be that Congress' desire to avoid any such result motivated it in the enactment of the legislation in question. However that may be, the section seems to require the taxation of the portion of the annuity which the respondent has included in decedent's income.

*Judgment will be entered for the respondent.*