## RAYMOND v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7194.

Circuit Court of Appeals, Seventh Circuit.

June 22, 1940.

Rehearing Denied Aug. 9, 1940.

Writ of Certiorari Denied Dec. 9, 1940.

See 61 S.Ct. 319, 85 L.Ed. ——.

Merritt C. Bragdon, James F. Oates, Jr., and Middleton Miller, all of Chicago, Ill. (Sidley, McPherson, Austin & Burgess, of Chicago, Ill., of counsel), for petitioner.

Samuel O. Clark, Jr., J. P. Wenchel, and Chas. E. Lowery, all of Washington, D. C., and Sewall Key, and Morton K. Rothschild, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

This appeal involves the extent of petitioner's liability, if any, for federal income tax, based on annuities paid to her by charitable institutions, pursuant to contract, the consideration for which was the payment of money allegedly in excess of the cost of the annuities.

Anna Raymond executed nine contracts with six charitable, educational or eleemosynary corporations, to whom she transferred property valued at $1,246,906.76 in return for payment to her of $62,500 each year of her life.

Herewith is a statement upon which the commissioner based his tax assessment which was approved by the Board of Tax Appeals.

| Date | Annuity | Institution | Property Transferred | Insurance Co. price of similar annuity | 1933 Aggregate annuity payments received | 1934 Aggregate annuity payments received | 1933 Excess of aggregate amount received over Insurance Co. price | 1934 Excess of aggregate amount received over Insurance Co. price | Amount taxable in 1934 |
|---|---|---|---|---|---|---|---|---|---|
| 7/24/25 | $ 5,000.00 | Art Institute | $ 98,937.50 | $ 41,316.00 | $ 40,000.00 | $ 45,000.00 | 0 | $ 3,684.00 | $ 684.00 |
| 7/27/25 | 15,000.00 | Field Museum | 302,150.00 | 129,533.67 | 123,750.00 | 138,750.00 | 0 | 9,216.33 | 9,216.33 |
| 8/ 4/25 | 5,000.00 | St. Luke's Hospital | 98,265.00 | 43,177.89 | 41,250.00 | 46,250.00 | 0 | 3,072.11 | 3,072.11 |
| 8/ 5/25 | 5,000.00 | Univ. of Chicago | 100,831.67 | 43,177.89 | 41,250.00 | 46,250.00 | 0 | 3,072.11 | 3,072.11 |
| 12/ 1/25 | 10,000.00 | Field Museum | 198,772.09 | 85,353.36 | 80,000.00 | 90,000.00 | 0 | 4,646.64 | 4,646.64 |
| 2/15/26 | 10,000.00 | Art Institute | 200,000.00 | 84,860.82 | 77,500.00 | 87,500.00 | 0 | 2,639.18 | 2,639.18 |
| 5/ 7/26 | 7,500.00 | N. W. University | 150,000.00 | 63,088.83 | 56,250.00 | 63,750.00 | 0 | 661.17 | 661.17 |
| 8/10/27 | 2,500.00 | N. W. University | 50,000.00 | 20,115.87 | 15,625.00 | 18,125.00 | 0 | —1,990.87 | 603.48 (3% of $20,115.87) |
| 5/22/30 | 2,500.00 | Children's Hospital | 47,950.50 | 18,121.19 | 8,750.00 | 11,250.00 | 0 | —6,871.19 | 543.64 (3% of $18,121.19) |
| | $62,500.00 | | $1,246,906.76 | $528,745.52 | $484,375.00 | $546,875.00 | 0 | $18,129.48 | $28,138.66 |

EVANS, Circuit Judge.

The Board concluded that the property transferred (valued at $1,246,906.76) was in legal contemplation in part a gift to the charities and in part a purchase of annuities. Accepting this premise, it determined the cost of comparable annuities when purchased from insurance companies. This "cost" was $528,745.52. It concluded the balance, $718,161.24, was a gift. The taxable year in question was 1934. By the end of that year taxpayer had received, in the way of annuity payments, a total of $546,875, which was in excess of the fair and easily determined amount which an insurance company would have charged for the same annuities.

Petitioner contends that no tax is due because she has not yet recouped, through annuity payments, the *entire* consideration she paid for her annuities—that the "insurance cost" basis utilized by the Board is a fictional one without support of the statute, and is not sustained by the experiences of institutions engaged in similar undertakings.

She also argues that Sec. 22(b) (2) of the Revenue Act 1934, 26 U.S.C.A.Int.Rev. Code § 22(b) (2), is unconstitutional because it is a tax on capital (annuity payments might have to be taken from corpus if income is not sufficient) and, since not apportioned among the states, is violative of the Constitution (Art. I, Sec. 2, Clause 3; Art. I, Sec. 9, Clause 4, of the Constitution).

The transfers were made from July, 1925, to May, 1930, when the taxpayer's age ranged from 71 to 76 years.

In determining the deficiency tax for the year 1934, the Board calculated the tax according to the formula of Sec. 22(b) (2) of the Revenue Act of 1934. In other words, it included, in taxable gross income, the entire amount of annuity payments received during said year, where the "cost" (according to insurance company prices) had been theretofore recovered through annuity payments, and, in the two instances where such "cost" had not been completely recouped, it included in the gross income only three per cent of the annuity received, in accordance with Sec. 22(b) (2). The net amount found

taxable for 1934 was $28,138.66, and income taxes of $2,162.08 are here involved.[1]

The Revenue Act of 1934, Sec. 22(b) (2), defined the method of handling annuities for income tax purposes. In brief, three per cent of annuity payments received were to be included in gross income, until such time as the total amount of annuity payments received should aggregate the premiums or consideration paid for such annuity, and thereafter all annuity payments received should be included in gross income. Sec. 22(b) (2) provides:

"Sec. 22. Gross income

\* \* \* \* \*

"(b) *Exclusions from gross income.* The following items shall not be included in gross income and shall be exempt from taxation under this title [chapter]:

\* \* \* \* \*

"(2) *Annuities, etc.* \* \* \* Amounts received as an annuity under an annuity or endowment contract shall be *included* in gross income; except that there shall be excluded from gross income the *excess* of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or *consideration* paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title [chapter] or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. \* \* \*"

Pertinent portions of the Regulations are set forth in the margin. [2]

One issue in this case is the applicability of Sec. 22(b) (2) to annuities paid by charities in return for substantial donations, largely in excess of the amount which would have been expended by the annuitant to obtain comparable annuities from insurance companies. We set forth excerpts from the Congressional Committee Reports and from Congressional discussions in an effort to throw light upon the legislative intent behind this enactment. [3]

---

[1] The tax would have been $2,670.61, but the petitioner paid $508.53 taxes for the year 1934, which payment has not been refunded and therefore is applicable to the $2,670.61 tax assessed thereby reducing the amount owing to $2,162.08.

[2] Regulations 86 (1934):

"Art. 22(a)-12. *Annuities and insurance policies.*—Annuities paid by religious, charitable, and educational corporations under an annuity contract are, in general, subject to tax to the same extent as annuities from other sources paid under similar contracts. (See section 22(b) (2) and article 22(b) (2)-2.) \* \* \* Amounts received as a return of premiums paid under life insurance, endowment, or annuity contracts, and the so-called 'dividend' of a mutual insurance company which may be credited against the current premium, are not subject to tax."

"Art. 22(b) (2)-2. *Annuities.*—\* \* \* If an annuity is payable in annual installments, there shall be included in gross income only such portion of the amounts received in any taxable year as is equal to 3 per cent of the aggregate premiums or consideration paid for such annuity, whether or not paid during such year. If an annuity is payable in two or more installments over each 12-month period, such portion of each installment shall be taxable as is equal to 3 per cent of the aggregate premiums or consideration paid for such annuity, whether or not paid during the taxable year, divided by the number of installments payable during such year. As soon as the aggregate of the amounts received and excluded from gross income equals the aggregate premiums or consideration paid for such annuity, the entire amount received thereafter in each taxable year must be included in gross income."

[3] "Mr. Austin: \* \* \* At this point may I inquire of the chairman of the committee whether it is his understanding that this measure would apply to hospitals and universities, which obtain a large amount of their endowments by selling annuity contracts? Is that the interpretation which would be placed upon the measure?

"Mr. Harrison: Mr. President, it does not apply to them at all. It applies only to persons receiving income. It does not apply to them.

\* \* \* \* \* \*

"Mr. Austin: \* \* \* Assume that a hospital has received from a philanthropist $100,000 for immediate use by the hospital in erecting buildings, in consideration of which the hospital promises to pay to the donor as an annuity a sum corresponding to 5 per cent annually of the amount of the gift. Would the receiver of that income be a taxpayer, under this provision of the measure?

\* \* \* \* \* \*

"Mr. Austin: It does not apply to a person who makes such a donation to a university or college?

"Mr. Harrison: It might apply to the person who took out one of these policies,

Petitioner stresses the fact that in negotiating for the annuities she sought *as large* an annual return as the charity was willing to obligate itself to pay for the transfer. She points out that these charitable institutions have made in all but 84 such annuity agreements, and they have to provide a greater reserve for a greater risk inasmuch as the law of averages is less apt to operate accurately in a small group. Also, charities not only require a greater margin of protection, but desire (and expect) at the end of the annuitant's life there will be a substantial sum available for the charity.

Briefly petitioner argues:

(1) Sec. 22(b) (2) of the Revenue Act of 1934 should not be construed to operate retroactively so as to include annuity contracts executed several years (1925–1930) before its passage.

(2) The regulations in effect for several years (1918–32) (presumably approved by Congress) upheld as the "cost" of charitable annuities, the entire consideration paid therefor.

(3) The Board erred in finding that any part of the transaction was a gift. Petitioner points out that in all probability the charities would not have made the contracts if only an amount equal to the insurance cost of annuities had been transferred.

 The Government contends:

(1) The facts in support of the Board's determination that part of the transfers did constitute gifts were letters so stating; charities would not have accepted the contracts, if gifts were not intended.

(2) Assuming for the purpose of the argument that the cost of the annuities was the full amount transferred, if Sec. 22(b) (2) be applicable then 3% of the $1,246,906.72—$37,407.20—would be taxable, which amount is even greater than that found taxable by the Board (i. e., $28,138.66). Since the Government did not cross appeal, it does not and cannot urge that the larger sum be the taxable base. [4]

(3) The Congressional discussion does not disclose an intent to exempt annuities paid by charitable institutions.

(4) Taxpayer did not present evidence to show that the property transferred did not earn 3% so that capital was being returned to the transferor and was being taxed. Taxpayer may not assert unconstitutionality.

 We will not elaborate our views more than to observe that on either theory (the majority or minority view of the Board of Tax Appeals), petitioner was liable for the amount assessed against her. We are satisfied that such annuities are not exempt from taxation because paid by a charitable or eleemosynary corporation to the annuitant; that the amount paid by the taxpayer was in excess of the fair cost of the annuity; that the sum which the Board found was the fair cost of the annuities is a sum of which petitioner may not complain (for it is more than the actual cost of the annuity, being based on insurance companies' estimates [5]); that Congressional intention to include such income as part of taxpayers' taxable income has been clearly shown. Such a tax levy is valid.

The order of the Board is

Affirmed.

---

and to the income coming back to him, if he was giving it over to the hospital.

"Mr. Austin: That is all there is to my question. Would the donor to a university who received an annuity payment during his lifetime have to pay a tax, under the bill?

"Mr. Harrison: I have stated to the Senator that it all depends on the circumstances. In my opinion, if an individual should take out one of these annuities and collect a certain amount each year and turn it over to a hospital, of course he would have to pay on the income."

[4] One member of the Board dissented and was of the opinion that the taxable base was 3% of the total consideration paid for the annuities in those transfers where the consideration had not yet been returned through annuity payments.

[5] The insurance company tables are ultra-conservative.