ESTATE OF JAMES STUART PRITCHARD, MYRA HELMER PRITCHARD, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1352.   Promulgated October 18, 1944.

*John O. Snook, Esq.*, for the petitioner.
*Richard L. Greene, Esq.*, for the respondent.

206

OPINION.

KERN, *Judge*: Although the petitioner does not expressly admit that the transfers here were made in contemplation of death, she does concede, in her brief, the insufficiency of the evidence to overcome the

presumption to that effect, since the property constituted a material part of decedent's estate and the transfers occurred only a few weeks before the transferor's death. Even in the absence of such a presumption, the evidence would convince us that the transfers were so made. Petitioner suggests that section 811 (c) of the Internal Revenue Code has no application to life insurance policies, because of the special treatment of the proceeds of life insurance policies for estate tax purposes provided by section 811 (g). However, we have held otherwise in *May Billings*, 35 B. T. A. 1147, and *Estate of Frank A. Vanderlip*, 3 T. C. 358. There remains to be determined, therefore, only the question whether there was adequate and full consideration for the transfers, in which event the value of the policies would not be includible in the decedent's estate, for estate tax purposes, even though they were transferred in contemplation of death, since section 811 (c) of the Internal Revenue Code specifically excepts such property from its terms.

The consideration paid was, or at least was intended to be, the cash surrender value. The slight variation which was the result of erroneous calculation may be disregarded. It is now well settled, and the petitioner recognizes the fact, that cash surrender value is not the proper measure of the value of insurance policies for gift tax purposes. Cost of replacement value at the date of the gift is now authoritatively recognized as a more nearly accurate criterion of its value in cases where it is necessary to ascertain the value of insurance policies for gift tax purposes, "in the absence of more cogent evidence." *United States* v. *Ryerson*, 312 U. S. 260, 261. Our responsibility here does not extend, however, to a determination of the exact value of the policies involved, but only to a decision whether or not the consideration paid for the policies was adequate and full. This is essentially a fact question, and we have found that it was not adequate and full. A brief look at the substance of the transaction serves to demonstrate the correctness of that finding. The record here furnishes "more cogent evidence" upon the precise question before us than even replacement cost.

The decedent's wife was the sole, but not irrevocable, beneficiary of the insurance policies. The principal things which she acquired as a result of the assignments to her and the payment by her of the cash surrender value were the right to change the beneficiary (or, more accurately in this case, the right to have the beneficiary remain unchanged), the right to borrow upon or assign the policy, the right to surrender it for its cash value, and the right to hold it for its investment qualities until the death of the insured. Of these, she paid full consideration for only one—the cash surrender value, which, generally speaking, is the reserve in the hands of the company attributable to the policies, less a charge for surrender; it has no direct relation to the

life expectancy of the insured. The amount of the payment made by decedent's wife did not purport to be compensatory for the other rights or incidents of ownership which she acquired, and which were, in view of these peculiar circumstances, of greater real value to her than the right to surrender the policy.

The question before us is made to seem more complicated because of the several rights which make up the total valuable chose in action evidenced by the policy. The investment value of life insurance, attaching to the right to hold the policy for its investment qualities, is very greatly affected by the life expectancy of the insured, and the value rises in inverse ratio to the length of that life expectancy. One of the important elements to be considered in determining a value of a life insurance policy is its collectibility. The nearer the insured approaches death, which is the event of collectibility, the nearer its value approaches the face amount for which it was issued. In the instant case, the insured's health was in a desperate and hopeless, or at least a dangerous, condition, and death was known to be relatively imminent, i. e., his life expectancy was much less than that shown on the mortality tables as the life expectancy of an insurable man of his age. The investment feature of the policies was, therefore, at that time, their most valuable attribute. Their real value then depended not so much on how much had been paid for them, which determined their cash surrender value, as it did upon how much would almost certainly be received from them in a very much shorter time than that anticipated by the mortality tables upon which the premiums called for under the policies were calculated. Under these special facts, the cash surrender value was wholly inadequate as a measure of their worth at the time of the transfers, while replacement cost in the instant case, where the insured at the time of the transfer of the policies was obviously uninsurable, would be only helpful as a criterion of the minimum value to be placed on the policies in the absence of "more cogent evidence."

Petitioner urges that a valuation of a life insurance policy by approximating the particular life expectancy of an individual insured is impractical and would lead us into diagnoses and prognoses which would be even too difficult for medical science to give. The answer to this contention is that we are not called upon here to make an exact valuation of the policies in question. We are only asked for a decision of this question: Whether the payment of approximately $10,000 is full and adequate consideration for the transfer of insurance policies insuring for $50,000 the life of a middle-aged man who is known to be suffering from cancer, and who has just been unsuccessfully operated upon for the removal of a malignant growth.

While this appears to be a case of first impression, the reasoning of the Supreme Court in *Guggenheim* v. *Rasquin*, 312 U. S. 254, is, to some extent, adaptable to its solution. There it was argued that

the cash surrender value of a fully paid, single premium life insurance policy should be used for gift tax valuation purposes. The Court said:

Surrender of a policy represents only one of the rights of the insured or beneficiary. Plainly, that right is one of the substantial legal incidents of ownership. * * * But the owner of a fully paid up life insurance policy has more than the mere right to surrender it; he has the right to retain it for its investment virtues and to receive the face amount of the policy upon the insured's death. * * * All of the economic benefits of a policy must be taken into consideration in determining its value for gift tax purposes. To single out one and to disregard the others is in effect to substitute a different property interest for the one which was the subject of the gift. In this situation, as in others, an important element in the value of the property is the use to which it may be put.

In a comment upon this case, and its companion case, *United States* v. *Ryerson, supra*, in 54 Harvard Law Review 895, this thought was expressed:

In the situation, which has not yet arisen, where assignment is made when the insured is uninsurable, the policy is worth more than the cost of a like policy because of the shorter life expectancy.

A consideration of all the economic benefits acquired by the transferee in the instant case leads inevitably to the conclusion that the consideration paid by her was, in view of the special facts, neither full nor adequate. There was therefore no error in including in the decedent's estate so much of the value, at the date of death, of the property transferred as exceeded the consideration paid therefor.

*Decision will be entered for respondent.*