JANE J. DE CANIZARES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64310, 64311.    Filed May 14, 1959.

*Joseph W. Price 3d, Esq.*, for the petitioner.
*William C. Baskett, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The Commissioner has included in petitioner's gross income for each of the years 1951 to 1954, inclusive, the sum of $8,000 which she received in each of those taxable years from the company under the terms of an agreement which she entered into with the company on October 27, 1943.

The petitioner contests this determination of the Commissioner and states the issues in her brief as follows:

(1) whether the amounts received by petitioner during each of the years involved from R. H. Johnson Co. were excludible from gross income as being in the nature of a gift or bequest and (2) if such payments are held to be taxable to petitioner as an annuity, whether a portion of such payment may be excluded from petitioner's gross income during each of the years in accordance with the rules relating to the taxation of annuities.

As to division 1 of petitioner's statement of the issues, we think she cannot be sustained. Petitioner was the sole beneficiary under the will of Frederic and what she received from him with respect to the 117 shares of stock in the company was the 117 shares of stock itself. It seems clear that at the time of Frederic's death he was the owner of 117 shares of the company's stock. The value of these shares was included in Frederic's gross estate and nobody contends that to do so was error. Thus, it is clear that what petitioner received as a bequest from Frederic was 117 shares of the company's stock. Plainly, the receipt of the 117 shares of stock by petitioner as a bequest from Frederic would not be taxable income to her. The Commissioner makes no such contention. But what happened was that after Frederic's death petitioner, in her individual capacity and as executrix of her husband's estate, transferred to the company the 117 shares of the company's stock which had been bequeathed to her in consideration of the company's agreement to pay her an annuity of $8,000 each year for the remainder of her life.

It is this $8,000 which petitioner received in each of the taxable years that the Commissioner seeks to tax for 1951, 1952, and 1953 under sections 22(a) and/or 22(b)(2), 1939 Code, and for 1954 under sections 61 and 72, 1954 Code. It seems to us that whether and to what extent petitioner is taxable on the $8,000 is to be determined by a consideration of the provisions of section 22(b)(2), 1939 Code,[1] and similar provisions in the 1954 Code.

---

[1] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME —The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * * *

(2) ANNUITIES, ETC.—

(A) In General.—Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such con-

It seems to be too plain for argument that the $8,000 annual payment for life which petitioner was to receive under the agreement with the company, as consideration for the transfer of the 117 shares of stock to the company, was an annuity. The only question for decision here, it seems to us, is what was the cost to petitioner of the annuity of $8,000 which she was to receive.

Under the terms of section 22(b)(2), whatever the cost was to petitioner she was under the legal obligation to return for taxation in each taxable year after the annuity began, 3 per cent of the cost of the annuity and the balance of the $8,000 was to be excluded until she entirely recovers her cost of the annuity. Thereafter, the entire $8,000 is taxable as ordinary income. That seems to be the clear meaning of section 22(b)(2) printed in the margin and is the interpretation which the Treasury has given the statute in Rev. Rul. 239, 1953-2 C.B. 53. In that ruling it was held that the "consideration paid" for an annuity contract executed by an individual in exchange for real property is the fair market value of the real property at the time of the transfer. The annuity payments received under the contract constitute ordinary income to the extent of 3 per cent of the fair market value of the real property at the time of the transfer until the aggregate of that portion of the payments which is not taxable under section 22(b)(2) of the Code equals the fair market value of the property transferred. After such time the payments are taxable in full as ordinary income.

In the instant case, what was the "consideration paid" by petitioner for the $8,000 annuity which is being paid to her by the company? Petitioner contends that it was the cost of a comparable annuity which would have been written by a commercial insurance company, payable to one having a life expectancy equal to that of petitioner at the time of the contract of October 27, 1943, between petitioner and the company. In pursuance of this contention, petitioner introduced evidence at the hearing to the effect that the single-premium cost of an annuity, based upon what a regular commercial insurance company would have charged to a woman 67 years of age on July 31, 1943, providing an income of $8,000 annually for life with the first payment to be made as of date of purchase and continuing annually during her lifetime, would have been $121,841. But assuming, as petitioner contends, that the cost of an annuity similar to that which petitioner is receiving would have cost $121,841 from a commercial

tract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income ; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *

insurance company, it is clear to us that petitioner's annuity of $8,000 had no such cost to her as $121,841. The cost to her, under the authorities which we have examined, was the fair market value of the 117 shares of stock which she transferred to the company by the agreement of October 27, 1943. That fair market value was $57,735.92, which was the figure determined for estate tax purposes at the time of the death of Frederic, July 31, 1943. We have no other evidence as to the fair market value of the 117 shares of stock at the time of its transfer by petitioner to the company on October 27, 1943, in consideration of the annuity than the value which was used for estate tax purposes.

Petitioner, in arguing that the cost to her of the annuity was what a regular insurance company would have charged for a similar annuity regardless of the fair market value of the property which she transferred to the company, relies upon *Anna L. Raymond*, 40 B.T.A. 244, affd. 114 F. 2d 140. We think petitioner's reliance on that case is misplaced. That case held that where the consideration paid by a taxpayer to charitable institutions for annuities was *in excess* of cost of the annuities and so was in part a gift, cost based on insurance company estimates as to cost of similar annuities was the fair cost to be used for the purpose of determining what part of annuity payments received by the taxpayer was subject to income tax under section 22(b)(2), 1939 Code.

In the instant case, there is no contention that the 117 shares of stock which petitioner transferred to the company in consideration of the annuity had a fair market value *in excess* of the cost of a similar annuity written by a commerical insurance company. In fact, it seems entirely clear that the fair market value of the 117 shares of stock was much less than a commercial insurance company would have charged for a similar annuity contract. That being true, we think it must be held that the cost to petitioner of the annuity contract here in question was the fair market value of the stock at the time of transfer, which we have held under the evidence was $57,735.92. Under section 22(b)(2) it is 3 per cent of this $57,735.92 which is taxable to petitioner in each taxable year as ordinary income until the amount which is excluded under the provisions of the statute equals petitioner's cost of the annuity, $57,735.92. Thereafter, all of the $8,000 is taxable.

Certainly, we know of no case, and we have been cited to none, which holds that a taxpayer who has purchased an annuity from a noncommercial source at a price less than a commercial insurance company would have charged for a similar annuity would have a right to use as his basis of cost for the annuity the higher cost which the commercial insurance company would have charged.

We deny petitioner's contention that she has the right to use as her basis of cost for the annuity which she receives under the contract,

$121,841 which was the cost which a commercial insurance company would have charged for a similar annuity.

Respondent, on his part, makes a contention which we also think is unsound. He contends that in years prior to the years here involved petitioner had excluded from gross income within the meaning of section 22(b)(2) payments totaling $59,333.33, which amount exceeds the $57,735.92 which petitioner paid for the annuity contract. Therefore, argues respondent, the $8,000 payment received by petitioner in each of the years 1951 to 1954, inclusive, is taxable as ordinary income. Respondent relies for this contention upon the following stipulated facts: "As of December 31, 1950, the sum of such payments to petitioner totalled $59,333.33, none of which was reported by petitioner in her income tax returns for the years 1943 to 1950, inclusive." We do not have before us for adjudication petitioner's income tax liabilities for the years 1943 to 1950, inclusive. Regardless of what petitioner included and what she excluded with respect to her $8,000 annuity in those years, it does not govern her tax liability in the years we have before us. It is the statute itself which says:

Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. * * *

In adding up the amount of exclusions petitioner is entitled to take before the entire $8,000 is taxable to her as ordinary income, the addition must be made upon what the statute prescribes a taxpayer may exclude and not what the taxpayer may have actually excluded in prior years. We think such is the effect of the Treasury's own ruling, Rev. Rul. 239, *supra*, to which we have already referred. This rule should govern the computation of the amounts taxable to petitioner in the taxable years we have before us for the years 1951, 1952, and 1953, under Rule 50.

For the taxable year 1954 the applicable statutes are sections 61 and 72 of the 1954 Code. They provide for a somewhat different treatment for the taxation of annuities as is provided by section 22(b)(2) of the 1939 Code. In a recomputation under Rule 50 for the year 1954 the provisions of the 1954 Code for the taxation of annuities should be applied.

In the Commissioner's determination for the year 1951 he added $204.38 under the provisions of section 294(d)(2), 1939 Code. In the petition, error is assigned to this determination of the Commissioner on the ground that petitioner's underestimation of her tax for 1951 was due to reasonable cause. However, at the hearing of this proceed-

ing no evidence was offered by petitioner to establish reasonable cause. We think it is also proper to point out in this connection that the question of reasonable cause is immaterial in a consideration of the applicability of the addition to tax under section 294(d)(2). See *H. R. Smith*, 20 T.C. 663 (1953), and *Kaltreider* v. *Commissioner*, 255 F. 2d 833 (C.A. 3, 1958). Therefore, we sustain the Commissioner's determination that there should be an addition to the tax for 1951 under section 294(d)(2). The amount thereof will be determined under Rule 50.

*Decisions will be entered under Rule 50.*