MARY BALLARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ballard v. Commissioner
Docket No. 17352-90.
United States Tax Court
T.C. Memo 1992-217; 1992 Tax Ct. Memo LEXIS 235; 63 T.C.M. (CCH) 2748; April 13, 1992, Filed *235 Decision will be entered under Rule 155. A designated P as the beneficiary of his employee retirement plan. Prior to naming P as his beneficiary, A asked P to pay A's debts upon his death, and P orally agreed to do so. P did not know the value of A's retirement account, nor did she know the amount of debt she might be expected to pay therefrom. A also named P as the beneficiary of a life insurance policy. On Sept. 29, 1987, A died at age 51, and the balance of his retirement account, $ 38,959, was paid directly to P as the named beneficiary. P also received payment on A's life insurance policy. P then paid $ 6,103 for A's funeral and other miscellaneous expenses. During 1987, P lived with her adult son, J. For 1987, J received disability income in an amount less than $ 1,900 and did not receive any wages. P provided more than one-half of J's support in 1987. Held: Taxation of the distribution is computed under the provisions of secs. 402(a) and 72(e). Held further: A transfer of an interest in A's retirement plan to P did not result from the arrangement between A and P. Held further: P is not entitled to use the 5-year forward averaging rule of sec. 402(e) to *236 compute the tax due on the distribution. Held further: P is entitled to an additional dependency exemption for her adult son. Held further: P is not entitled to unidentified additional deductions. James B. Lewis and Robert L. Schwartz, for petitioner. Albert G. Kobylarz, Jr., for respondent. PANUTHOS
PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3). [1]
In her notice of deficiency dated June 27, 1990, respondent determined the following deficiency and additions to tax in petitioner's 1987 Federal income taxes: Additions
Deficiency
Sec. 6653(a)(1)(A)
Sec.6653(a)(1)(B)
Sec.6661(a)
$ 5,583
$ 279.15
50% of the interest payable
$ 1,395.75
under sec. 6601 with respect
to the portion of the under-
payment which is attributable
to negligence
*237 At trial, respondent conceded the additions to tax under sections 6653(a)(1)(A) and (B) and 6661(a). The issues remaining for decision are: (1) Whether petitioner properly reported a distribution from a qualified retirement plan that she received on account of the death of the employee/participant; (2) whether petitioner is entitled to an additional dependency exemption; and (3) whether petitioner is entitled to additional unidentified deductions. At trial, petitioner raised the issue of (4) whether 5-year averaging under section 402(e) applies to determine the tax liability on the distribution received by her. FINDINGS OF FACTS Some of the facts are stipulated and are so found. At the time of filing the petition herein, petitioner resided at Jersey City, New Jersey. In 1987, petitioner was a widow and resided in Jersey City with her son, Joel. Joel, who was born in 1953, collected disability benefits in an amount less than $ 1,900 during 1987. Joel had no other income during that year. Petitioner paid more than one-half of the household expenses and more than one-half of Joel's support in 1987. Prior to moving to Jersey City, petitioner and Joel lived in Brooklyn, New *238 York. Sometime in the late 1960s, they met Robert Arthur (Arthur). Arthur lived in a hotel a few blocks away from petitioner's residence. Over time, petitioner became close friends with Arthur, who was 16 years her junior. Arthur also became good friends with Joel. Arthur and petitioner were not related. Arthur was not married and had no children. He was not close to any of his relatives. Even after petitioner and her son moved from Brooklyn to Jersey City, petitioner saw Arthur at least monthly and sometimes more frequently. Arthur did not trust attorneys and, consequently, did not have a will drafted. Although he didn't like bankers, either, he maintained a small checking account, primarily for medical expenses. Arthur put petitioner's name on this account and sometimes gave her money from it. [2]
Arthur was employed by Abraham & Straus stores (A&S) in Brooklyn, New York. A&S is a division of Federated Department Stores (Federated). Arthur *239 was a participant in a qualified pension plan established by Federated, the Federated Department Stores, Inc. Retirement Income and Thrift Incentive Plan (plan). Participants in the plan could designate the beneficiary of their accounts. Participants could revoke a prior beneficiary designation by filing another properly executed beneficiary designation form. [3]
In 1972, Arthur advised petitioner that he was going to name her the beneficiary of his pension plan account. Because of strained family relations, Arthur did not want to name any of his family members as beneficiaries of the account. He was also concerned that his family members would not pay his bills at his death and asked petitioner if she would do so. Petitioner orally agreed to pay Arthur's debts and funeral expenses upon his death. Arthur executed a beneficiary designation form *240 dated November 3, 1972, naming petitioner as beneficiary. Arthur executed a second designation of beneficiary form dated June 20, 1984, on which he reflected petitioner's changed address. Arthur also named petitioner the beneficiary of a life insurance policy. Petitioner was not aware of the value of Arthur's plan account, nor was she aware of the amount of expenses that would exist at his death. Petitioner felt that Arthur would likely outlive her since he was 16 years younger than she. Further, if Arthur married prior to his death, petitioner expected that he would change the beneficiary designation to name his spouse. Thus, petitioner thought it was unlikely that she would ever receive the proceeds of the pension or be called upon to pay expenses related to Arthur's death. Arthur died on September 29, 1987, at the age of 51. [4] At the time of his death, Arthur was still employed by A&S and a participant in the plan. During his participation in the plan, Arthur made a total of $ 2,670.23 in employee contributions. In accordance with the beneficiary designation, the credit balance of Arthur's plan account in the amount of $ 38,959 (distribution) was paid to petitioner in *241 one payment on October 31, 1987. Petitioner also received approximately $ 1,500 as the beneficiary of Arthur's life insurance policy. Arthur did not have any accrued salary owed to him at the time of his death. Petitioner filed Arthur's final income tax return and received a refund in the amount of $ 600. Petitioner deposited this check in her account and then wrote a check in the same amount to Arthur's sister. At the time of Arthur's death, the joint checking account on which Arthur had put petitioner's name contained a balance of $ 90, which became petitioner's under the terms of the account. After Arthur's death, petitioner retained the services of attorney Steven Klein to assist her with Arthur's affairs. After receipt of the distribution, petitioner paid the following amounts in connection with the death of Arthur: Keller Funeral Home
$ 4,530.30
Metropolitan Funeral Service
710.00
Abraham & Straus, final bill
94.56
Majestic Hotel, 2 weeks rent at 67.00 week
134.00
Attorney Steven Klein
500.00
Long Island College Hospital
109.50
Long Island College Hospital
25.00
TOTAL
$ 6,103.36
*242 Petitioner timely filed her Federal income tax return for 1987. Petitioner claimed head of household filing status, one exemption for herself, and did not include the $ 38,959 distribution in income reported on the return. Petitioner filed an amended Federal income tax return (Form 1040X) dated February 20, 1990. On the amended return, petitioner increased her reported income by $ 25,193, computed as follows: Distribution:
$ 38,959
Less:
Death benefit exclusion
5,000
Employee contribution
2,670 [1]
Funeral & other expenses
6,096
13,766
Amount includable in income
$ 25,193
She also claimed an additional personal exemption for her son, Joel, and additional unidentified deductions. In her notice of deficiency, respondent disallowed for lack of substantiation the personal exemption for Joel and the unidentified additional deductions, and determined that the distribution should be taxed as follows: Distribution:
$ 38,959
Less:
Death benefit exclusion
5,000
Employee contribution
2,671 [1]
7,671
Amount includable in income
$ 31,288
*243 Respondent also made a derivative adjustment in respect of the amount of petitioner's social security benefits includable in income. OPINION As a general rule, respondent's determinations are presumed to be correct, and it is petitioner's burden to show error. Rule 142(a). Petitioner agrees that the distributed amount ($ 38,959) is includable in income for 1987, subject to reduction. However, we must address the parties' respective theories of inclusion since resolution of those questions affects reduction of the amount included in petitioner's income. The controversy centers on whether petitioner is entitled to reduce the amount includable in income by the expenses that she paid on behalf of Arthur after his death. In their memoranda, the parties take entirely different approaches to the theory of taxation of the distribution. Petitioner argues that the distribution is taxable under sections 402(a) and 72(e), which provide the rules for taxation of beneficiaries *244 of employees' trusts. Petitioner maintains that the $ 6,103 that she expended in payment of Arthur's debts and funeral expenses should be considered her "investment in the contract" under section 72(e) and, thus, excluded from income under section 72(e)(2)(B). Finally, petitioner argues that she is entitled to compute the tax due on the distribution under the 5-year forward averaging rule of section 402(e), and that all of the foregoing rules apply for determining the tax under that section. Respondent's view of the issue is that the provisions cited by petitioner do not apply, and the distribution is taxable as "income in respect of a decedent" under section 691, with no deduction being allowed for the expenditures voluntarily assumed by petitioner. We first consider respondent's argument that the tax at issue should be determined under the provisions of subchapter J of the Code, relating to the income taxation of trusts, estates, beneficiaries, and decedents. Section 641(a) imposes a tax on the taxable income of an estate. Section 691 concerns the taxation of income in respect of a decedent (IRD). There is no question that Arthur's accrued retirement benefits constitute IRD. *245 Secs. 691(a)(1), 402(a)(1); see Crawford v. Commissioner, T.C. Memo. 1982-121. The general rule with respect to taxation of IRD is contained in section 691(a)(1)(B): The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of * * * the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent * * *
Respondent argues that if Arthur had executed a will, the benefits would have been payable to the estate, which estate would have been required to pay an income tax on the entire distribution and which could not compute the tax by offsetting the income by deductions for personal expenses paid for Arthur after his death. [5] Respondent goes on to argue that following payment of the tax and miscellaneous expenses, the remainder of the distribution would be available to distribute to petitioner as the beneficiary of Arthur's *246 will. We do not agree with respondent's approach to this case. Her argument fails to consider the fact that even with a will and an estate, Arthur could still have named petitioner (not his estate) the beneficiary of his plan benefits and those benefits would have been distributed directly to petitioner and not to the estate. Consequently, under section 691(a)(1)(B), petitioner would *247 nevertheless be liable for the income tax on the distribution. Section 691 merely identifies the taxpayer and the timing of inclusion of IRD. Respondent's argument that taxation is determined under section 691 is not inconsistent with petitioner's position that the ultimate tax liability is determined under section 402. We believe that such interaction is implicit. [6] We thus reject respondent's argument that section 402(a) does not apply to the instant situation. Turning to section 402, we note that the regulations specifically provide that section 402(a) and section 72 apply to determine the tax due on a distribution received by an employee's beneficiary on account of the employee's death. Sec. 1.402(a)-1(a)(5), Income Tax Regs. Amounts actually distributed from a qualified trust (which is exempt from tax) are taxable to the distributee under section *248 72 in the year of distribution. Sec. 402(a)(1). Section 72 relates to the taxation of annuities and certain proceeds of endowment and life insurance contracts. Section 72(e) is applicable to, inter alia, amounts received under an annuity contract but not received as an annuity. The distribution received by petitioner falls into this category. Sec. 1.72-2(a)(1) and (b)(2), Income Tax Regs. Under the general rule, any amount received on or after the annuity starting date must be included in gross income. Sec. 72(e)(2)(A). Amounts received before the annuity starting date are included in income to the extent allocable to income on the contract, and not included in income to the extent allocable to the investment in the contract. Sec. 72(e)(2)(B). [7]
Under section 72(c)(4), "annuity starting date" is defined as the first day of the first period for which an amount is received as an annuity *249 under the contract. Since Arthur was still employed by A&S at the time of his death, he had not started drawing annuity payments on his retirement account. Thus, the distribution was received by petitioner before the annuity starting date and, accordingly, section 72(e)(2)(B) applies. Under that provision, any amount which is allocable to the investment in the contract shall not be included in income. "Investment in the contract" is defined in section 72(e)(6): Investment in the contract. -- For purposes of this subsection, the investment in the contract as of any date is -- (A) the aggregate amount of premiums or other consideration paid for the contract before such date, minus (B) the aggregate amount received under the contract before such date, to the extent that such amount was excludable from gross income under this subtitle or prior income tax laws.
The "date" referred to in this provision is the date of the distribution. Sec. 72(e)(8)(B). Prior to his death, Arthur made employee contributions to the plan totaling $ 2,670.23. Respondent agrees that this amount is not includable in petitioner's income pursuant to section 72(e)(2)(B). Petitioner argues that *250 an additional $ 6,103.36 (the total expenses she paid for Arthur following his death) should also be excluded from income under section 72(e)(2)(B) as her "investment in the contract." Her argument is based on section 72(g), which provides as follows: (g) Rules for Transferee Where Transfer was for Value. -- Where any contract (or any interest therein) is transferred (by assignment or otherwise) for a valuable consideration, to the extent that the contract (or interest therein) does not, in the hands of the transferee, have a basis which is determined by reference to the basis in the hands of the transferor, then -- (1) for purposes of this section, only the actual value of such consideration, plus the amount of the premiums and other consideration paid by the transferee after the transfer, shall be taken into account in computing the aggregate amount of the premiums or other consideration paid for the contract; (2) for purposes of subsection (c)(1)(B), there shall be taken into account only the aggregate amount received under the contract by the transferee before the annuity starting date, to the extent that such amount was excludable from gross income under this subtitle *251 or prior income tax laws; and (3) the annuity starting date is January 1, 1954, or the first day of the first period for which the transferee received an amount under the contract as an annuity, whichever is the later.
For purposes of this subsection, the term "transferee" includes a beneficiary of, or the estate of, the transferee.
Petitioner maintains that her arrangement with Arthur was a condition to being named his beneficiary and that the arrangement amounts to a transfer of an interest in the plan. The transfer for consideration rule is operative only if there has been a transfer for real consideration. Estate of Pritchard v. Commissioner, 4 T.C. 204, 209 (1944). Cases in which we have considered arguments by taxpayers seeking to apply this provision have involved actual transfers or assignments of annuity contracts. See Estate of Bell v. Commissioner, 60 T.C. 469, 471 (1973); de Canizares v. Commissioner, 32 T.C. 345, 351 (1959). The record of this case does not support the factual conclusion that Arthur transferred an interest in his retirement plan to petitioner for a valuable consideration. Arthur's *252 designation of petitioner as beneficiary of the plan did not alter the actual present ownership of the account or the rights thereto. The beneficiary designation was revocable up until his death and nothing in Arthur's arrangement with petitioner qualified that revocability. Without more, the act of designating a beneficiary does not constitute a transfer of a present interest in a plan. We further note that the plan, as a condition to being qualified pursuant to section 401(a), is required to contain a provision that benefits provided under the plan may not be assigned or alienated. Sec. 401(a)(13)(A). [8] The only exception to the anti-assignment rule is a qualified domestic relations order, with which we are not concerned here. Sec. 401(a)(13)(B). Although some plans may qualify under section 401(a)(1) without satisfying the anti-assignment rule of section 401(a)(13), [9] petitioner has not shown that the plan falls into one of those limited categories. *253 Based on the foregoing, we hold that there was no transfer of an interest in Arthur's retirement plan from Arthur to petitioner. Pritchard v. Commissioner, a Memorandum Opinion of this Court dated October 24, 1944. [10] Since we hold that there was no transfer of any interest in the plan to petitioner, section 72(g) is inapplicable here. Consequently, petitioner is not entitled to any additional exclusion from income under section 72(e)(2)(B) over the amount of Arthur's contribution to the plan prior to his death. Even if we had found a transfer of an interest, petitioner's argument is still erroneous. The statute considers only payments made prior to the distribution as an "investment in the contract", and petitioner did not make the expenditures at issue until after she received the distribution. Sec. 72(e)(6) and (8)(B). On this issue, respondent's determination is sustained. *254 At trial, petitioner also argued that she should be allowed to compute the tax due on the distribution under the 5-year forward averaging rules of section 402(e). The averaging rule is available only for lump sum distributions received after the employee (Arthur) attains age 59-1/2. Sec. 402(e)(4)(B)(i). Arthur was not 59-1/2 at the time of the distribution; hence, 5-year averaging is not available to petitioner. With respect to the remaining adjustments to petitioner's return, we hold that petitioner is entitled to an additional dependency exemption for her adult son, Joel. We are satisfied that petitioner provided over half the support for Joel and that Joel's income for 1987 did not exceed the exemption amount ($ 1,900). Secs. 151(c)(1)(A), 152(a)(1). The nature of the additional deductions claimed by petitioner is not identified either on the amended return or in her petition to this Court. Petitioner did not present any evidence with respect to these additional deductions at the trial of this matter. Since petitioner bears the burden of substantiating any claimed deductions, we accordingly sustain respondent's disallowance of those additional deductions. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); *255 Welch v. Helvering, 290 U.S. 111, 115 (1933). To reflect the foregoing and concessions by respondent, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the tax year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties referred to the account as a "pay on death" account.↩
3. The execution line of the plan's beneficiary designation form states that "This designation revokes all previous beneficiary designations made by me under the Plan."↩
4. Arthur's date of birth was Jan. 27, 1936.↩
1. The exact amount of this item was $ 2,670.23.↩
1. The exact amount of this item was $ 2,670.23.↩
5. Amounts expended for funeral expenses, administration expenses, and claims against the estate of a deceased are deducted in arriving at the taxable estate for purposes of the Federal estate tax. Sec. 2053(a). Although estates are treated similarly to individuals for purposes of computing Federal income tax, amounts deductible under sec. 2053 are not deductible for purposes of computing the estate's Federal income tax unless there has been filed a statement waiving the right to such a deduction under sec. 2053. Secs. 641(b), 642(g). In any event, a deduction is not allowed for personal, living, and family expenses. Sec. 262(a)↩.
6. See, for example, sec. 691(c)(5), which provides for coordination with sec. 402(e)↩ for purposes of computing the total taxable amount of a lump sum distribution.
7. Paragraph (2)(B) applies to distributions from qualified pension, profit sharing, and stock bonus plans. Sec. 72(e)(8)↩.
8. This provision does not apply to assignments that were irrevocable on or before Sept. 2, 1974. Sec. 401(a)(13), added by sec. 1021(c) of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, 937. Even if the arrangement made in 1972 were considered to constitute a transfer of an interest, by petitioner's own testimony the arrangement was revocable (i.e., she thought that Arthur would change the beneficiary of his retirement plan if his life situation changed by marriage, etc.). Thus, the anti-assignment provisions of sec. 401(a)(13)↩ are applicable. 9. See sec. 1.401(a)-13(a), Income Tax Regs.↩
10. We need not decide whether petitioner or Arthur (or his estate) could have compelled performance of the arrangement. We note that petitioner argues under New York law that the statute of frauds cannot be used by respondent to attack the validity of her "contract" with Arthur. However, since sec. 72(g)↩ requires an actual transfer of an interest in Arthur's retirement plan (which we hold there was not), whether a valid contract existed between Arthur and petitioner is immaterial.